THORNAL, Justice.
Appellants, who were relators below, seek reversal of a final judgment sustaining a motion to quash an alternative writ of mandamus.
Despite numerous constitutional questions raised, the point for determination is whether appellants established a dear legal right to the performance of a clear legal duty by the respondent-appellee.
Appellants-relators were County Commissioners of Escambia County. They sought a peremptory writ of mandamus to compel the respondent Clerk of the Circuit Court to countersign vouchers to pay their salary at the rate of $6,000 per year. Respondent contended that by Section 1(f) subd. 2, Chapter 29752, Laws of Florida, 1955, Section 125.161, Florida Statutes 1955, F.S.A., the annual salary of relators was $4,800. The petition for the alternative writ alleged that the applicable proviso in Chapter 29752, supra, was unconstitutional and that they were thereby relegated to a broader provision of the Act which authorized the higher salary.
Chapter 29752, Laws of Florida 1955, was entitled An Act “relating to annual salaries of County Commissioners of the State of Florida”. The body of the Act divided counties of the State into nine major groups “according to population as shown by the last preceding regular or special Federal census”. These population groupings and the salaries for them are summarized as follows:
Population Salaries
(a) From 1 to 3,400 $ 900.00
(b) From 3,401 to 11,875 1,200.00
(c) From 11,876 to 27,000 1,800.00
(d) From 27,001 to 58,000 3,000.00
(e) From 58,001 to 60,000 3,600.00
(f) From 60,001 to 120,000 6,000.00
(g) From 120,000 to 250,000 7,000.00
(h) From 250,001 to 450,000 7,500.00
(i) Over 450,000 15,000.00
Escambia County with a population of 112,706 would fall in group (f), covering counties of 60,001 to 120,000, were it not for the proviso hereafter discussed. In addition to the basic population groupings above set forth, Chapter 20752, supra, contains twenty-four separate individual provisos all covering individual counties according to population. Each of these actually covers only one county and each *195 fixes a salary for that county different from the salary established by the so-called base group. One of these provisos which is applicable to Escambia County only is involved. In order to reflect the situation before us population group (f) referred to above is quoted in full as follows:
“(f) From 60,001 to 120,000 inclusive 6,000.00
“Provided, however, that in counties having population set forth hereafter, each county commissioner shall receive as annual salary the following:
“1. From 113,000 to 114.750, inclusive according to the Federal Census of 1950 8,400.00
“2. From 112,000 to 114,000, inclusive 4,800.00”
It will be noted that Escambia County is covered by sub-paragraph 2 under subsection (f) above quoted.
Relators contend that the Legislature was prohibited from fixing the compensation of County Commissioners by a special law. Under the provisions of Article III, Section 20, Florida Constitution, F.S.A., they are of the view that the constitutional prohibition against local laws “regulating the fees of officers of the State and county” prohibits a local law regulating the compensation of county commissioners. They contend that the proviso fixing the salary of the county commissioners in counties of 112,000 to 114,000 is a local law and that it was not advertised or ratified in a referendum as required by Article III, Section 21, Florida Constitution. It is further contended that the quoted proviso is repugnant to the general provisions and purposes of the Act and therefore must fall.
The appellee-respondent contended that the quoted proviso was a part of the general scheme for fixing the salaries of county commissioners on an appropriate population basis; that it was not repugnant to the general provisions and purposes of the Act and that regardless of all of this, the relators had failed to establish a clear legal right to the performance of a clear legal duty which is an essential to the issuance of a peremptory writ of mandamus.
The trial judge agreed with the position of the appellee and sustained a motion to quash the amended alternative writ. Reversal of this order is now sought.
It is important to note certain basic rules that govern all mandamus proceedings. We have, without exception, recognized the proposition that the issuance of a peremptory writ of mandamus depends upon the exercise of a sound judicial discretion. The writ cannot be allowed in any case involving a doubtful right. As a prerequisite to the issuance of the writ, it must be made to appear that the relator has a clear legal unequivocal right to the performance by the respondent of the particular duty in question. Likewise, it must be shown that the respondent is bound to perform the correlative clear legal duty. Garvin v. Baker, Fla.1952, 59 So.2d 360; L. B. Price Mercantile Co. v. Gay, Fla. 1950, 44 So.2d 87.
In the matter before us the relators contend that they are assaulting only the proviso relative to Escambia County. Despite the fact that there are twenty-three similar provisos in the statute, they take the position that we should ignore the effect of our holding on the other twenty-three provisos, strike down the one peculiarly applicable to them and sustain the remainder of the Act, thereby giving them the benefit of the salary fixed by “base group” (f).
We cannot so focus our judicial consideration of the statute. The Act in question, Chapter 29752, Laws of Florida 1955, contains no severability clause and, even if it did, it is inconceivable to us that the Legislature would have passed this Act without the twenty-four provisos. It imposes no undue burden on our judicial knowledge to take cognizance of the propo *196 sition that these provisos were obviously included as amendments to the originally introduced bill. Each amendment was inserted on the motion of the legislative delegation from the particular county or counties included within the proviso. Obviously, these provisos were conditions precedent to the ultimate approval of the bill that eventually became a law. See Journal of the Senate May 17, 1955, p. 617, and Journal of the House of Representatives, May 23, 1955, p. 1147.
If we can in any case safely conclude that the legislative intent is clearly reflected by the provisions of an Act, it certainly appears that in this instance it was beyond doubt intended that these provisos were conditions to final passage. The Act itself would never have become a law but for the insertion of the provisos, including the one objected to by the relators. This being so, it appears that if the proviso were held invalid the relators would be relegated to prior law rather than subsection (f) of the Act under attack.
 If all of Chapter 29752, Laws of 1955, were necessarily stricken because of the twenty-four provisos, each of which would be unconstitutional under relators’ argument, then the relators would have to fall back on Chapter 28192, Laws of 1953, Section 125.161, Florida Statutes 1953. This Act except for a difference in population groupings is identical in its basic characteristics with the 1955 Act and fixes the salary of the relators at $4,800. If we applied the reasoning of the relators to the 1953 Act and held it for naught, they would have to fall -back on Chapter 25113, Laws of Florida 1949, which is a population act likewise fixing their salary at $4,800. We deem it unnecessary to speculate back of 1949. The point is obvious that if the 1955 proviso attacked by the relators is unconstitutional, they still could not possibly establish a clear legal right to an increased salary. Of course, if it is constitutional, their salary is $4,800 as contended by the appellee-respondent.
In view of this situation it becomes unnecessary to pass upon the constitutionality of the Act under attack. Unfortunately for the relators, perhaps, their contentions in the court below and here place them upon the horns of a dilemma and not being able to occupy both positions, they failed in establishing their right to the issuance of a writ of mandamus.
We are sorely tempted to enter upon an historical discussion which we believe would clearly demonstrate the confusion, dissatisfaction and almost unlimited volumes of litigation that have resulted from the enactment of so-called “population bills”. This case is merely illustrative of the many which fill the official reports of this court. However, such a discussion is not essential to the ultimate decision in the case at bar. We abide by the rule that unless essential to a decision of the cause, the question of the constitutionality of a legislative enactment will not be considered by the court.
The relators, therefore, having failed to establish a clear legal right which entitles them to a performance of - a clear legal duty by the respondent, the order of the trial judge sustaining the motion to quash the alternative writ was correct.
The judgment is affirmed.
DREW, C. J., TERRELL, ROBERTS and O’CONNELL, J J.,. and WALKER, Associate Justice, concur.