287 So.2d 63 (1973)
James L. PEOPLES, Appellant,
v.
The STATE of Florida, Appellee.
No. 43988.
Supreme Court of Florida.
December 13, 1973.
*64 Phillip A. Hubbart, Public Defender, and Lewis S. Kimler, Asst. Public Defender, for appellant.
Robert L. Shevin, Atty. Gen., and Andrew W. Lindsey, Asst. Atty. Gen., for appellee.
BOYD, Justice.
This cause is before us on appeal from the Circuit Court, Dade County. The trial court, at trial, denied defendant's motion to dismiss, thereby passing on the validity of Sections 790.01[1] and 790.25,[2] Florida Statutes, F.S.A., giving this Court jurisdiction of the direct appeal under Article V, Section 3(b)(1) of the Constitution of the State of Florida, F.S.A.
The facts of the case are as follows:
Defendant, appellant herein, was charged by information with carrying a concealed firearm. He was arraigned, entered a plea of not guilty, and stood trial upon the charge. The trial court entered its order, withholding adjudication of guilt, and placing the defendant on probation.
The defendant was charged with carrying a concealed firearm. Prior to the trial, defense counsel submitted a motion to dismiss. It was submitted that the defendant was an employee of a business at the time he was carrying the firearm. According to defense counsel, he lived and worked in the store on the date of the incident. Two men were observed by the defendant removing property from the premises. At that time, the defendant entered the store, retrieved a pistol, and held the men for questioning. While waiting for the police, he seated himself upon a bench outside the store. The gun was in his holster under his shirt. When the police arrived, the defendant was arrested. According to defense counsel, the charges were subject to dismissal pursuant to Section 790.25. The court denied the motion with leave to submit testimony at the time of trial concerning residency.
Defense counsel then moved to dismiss the charges, alleging that Section 790.01 (and 790.25 as it pertains to 790.01) was unconstitutional in that it was vague and *65 did not afford the defendant a proper opportunity to be apprised of the law. The trial court denied the defense's motion.
Marlin Fagan, a deputy United States Marshal, testified that on August 22, 1972, he was driving his car when he observed the defendant walking with a man in front of him. Apparently, another man was running, and the defendant was pursuing. In the defendant's hand was a pistol. Fagan turned his car around, and proceeded to return to the scene. He there observed the defendant standing and talking with two men. The defendant was observed placing a pistol in his clothing while arguing with the younger of the two individuals. The witness left to phone the Public Safety Department. Approximately twenty minutes later, the police arrived. The defendant was approached and asked to step around the side of the building. He complied. At the time he was initially approached, he was sitting on a bench in front of the store. At all times the defendant was on the property of his employer. [Also, the defendant's residence wherein he received his mail]. According to this witness, he was drinking a can of beer. When the defendant proceeded around the side of the building, he was searched and a pistol was found underneath his shirt tail in back of his belt.
On cross-examination, Fagan testified that the defendant was sitting on a bench to the left side of the door.
Officer A. Krell, a police officer with the Public Safety Department, encountered the defendant on August 22, 1972. At the time of the encounter he was accompanied by Officer Saleeba. The defendant was pointed out by Mr. Fagan, and the officer approached. The weapon in question was removed from the defendant's back pocket area by Officer Saleeba. At the time, it was in a clip holster and could not be observed.
On cross-examination, the officer testified that when he first observed the defendant he was sitting. The defendant was asked to step around the side of the building whereupon the gun was removed.
Officer David Saleeba testified that he first encountered the defendant near the grocery store. The defendant was sitting on a bench which was flush against the front of said store. He was asked to stand up and step over to the corner of the building. It was there that the gun was discovered on his right rear hip. The gun was found under the shirt. The officer tested the revolving cylinder and dry fired the weapon. According to his testimony, it was in sound firing condition. The gun was admitted into evidence.
The State rested. Defense counsel tendered a Motion for Judgment of Acquittal to the Court. The motion was denied.
The defendant testified in his own behalf. He testified that he lived and worked at Lane's Grocery Store. On the day in question, he saw two gentlemen going toward the rear of the premises. The defendant claimed to have used the gun when he caught the two men stealing his lawn mower and Mrs. Lane's bicycle. He obtained the gun from the back of the store at the kitchen. Prior to obtaining the gun, he saw the two men unloading tires from the rear of their car and loading the bike and lawn mower into the car. The defendant obtained his gun, forced the two men to return the property, and then marched them around to the front of the building. At that time, the two men allegedly stated that they were advised by an unidentified person that the property belonged to said unidentified person, and they said that this third person had given them permission to take it. The defendant sent a friend to call the police and held the two men. He then brought the two men outside the store and was holding them for the police. When the police arrived, he was arrested. At the time of the arrest he was on the property of Lane's Grocery Store. [Meanwhile, unfortunately, the two unidentified suspects escaped.]
*66 William Lane, the owner of Lane's Grocery Store, testified that the defendant was an employee. The defendant received his mail at the grocery store. Further, the defendant resides at that address. According to Mr. Lane, the benches in front of the store were on his property.
On cross-examination, the State established that the defendant lived in a car in the back of the store, i.e., said car being on the property of Lane. When asked if the defendant was authorized to be a security man, Mr. Lane stated: "I paid for the gun." Mr. Lane's testimony implied that the defendant had the authorization to protect the premises.
Alice Lane, the cashier and waitress at the grocery store, recalled the defendant's arrest. Prior to the arrest, someone entered the store and requested that the police be called. Shortly thereafter the defendant entered with two gentlemen. The defendant and the witness engaged in a conversation. Approximately thirty minutes later, the defendant left the store with the two men in front.
The defense rested. A renewed Motion for Judgment of Acquittal was tendered to the trial court. After a lengthy argument the court found that the defendant was carrying the gun in a concealed manner in violation of the law. The court withheld ajudication.
On appeal, defendant has raised two issues. First, he argues that Sections 790.01 and 790.25, Florida Statutes, F.S.A., as applied to a person in possession of a concealed firearm in defense of his home and place of business, are so vague as to be in violation of Article I, Section 9, of the Constitution of the State of Florida, and Amendments V and XIV of the Constitution of the United States. Second, he argues that the trial court erred in finding the defendant guilty of violation of Section 790.01, when it was apparent that he was excepted under Section 790.25.
The Supreme Court will not determine the alleged invalidity of a statute where the matter may be disposed of on other grounds. State ex rel. C.P.O. Mess (Open), U.S. Naval Station, Key West v. Green.[3] In the instant case, we find that we may dispose of the problem at hand by our consideration of defendant's second, and non-constitutional, issue, and, therefore, it would be both unnecessary and improper to consider the constitutional question. We thus hereby reverse defendant's conviction, for reasons which will be set out below.
Subsection (3)(n) of Section 790.25 specifically exempts "a person possessing arms at his home or place of business" from the prohibitions of Section 790.01 and the registration requirements of Sections 790.05 and 790.06. This exception is reinforced by the "Declarations of Policy" and "Construction" set forth in Section 790.25(1) and (4).[4]
The record reflects unrebutted testimony that the defendant was a resident, and an employee, of the business establishment at which he was arrested. There is also unrebutted testimony that the defendant had been pursuing, on the property, two men whom he had caught attempting to commit a felony.
This Court, in Rinzler v. Carson,[5] noted that:
"[T]he Legislature in adopting the Revised Statutes of 1969, which includes Chapter 790 dealing with the subject of *67 weapons and firearms, has declared (Section 790.25(1)) it to be the policy of the Legislature not only that it is necessary to promote firearm safety and to curb and prevent the use of firearms and other weapons in crime and by incompetent persons, but also that the lawful use in defense of life, home and property and for other lawful purposes is not to be prohibited."[6]
If we upheld the lower court's verdict, we would be saying that a person, in defense of his home or place of business, is not permitted to conceal his possession of a firearm. This would mean that:
1). An owner of a business, or his employee, could not carry a concealed weapon on or about his person i.e., on his person, or in a drawer next to the cash register). He would either have to risk a loss of business by offending customers, or give up his only means of self-defense.
2). A homeowner would have to either carry his weapon in his hand or outside holster, or leave said weapon where it would be useless (as in a locked drawer and/or in plain sight).
The Legislature could not have intended a result so inconsistent with its Declaration of Policy in Section 790.25(1), the Exceptions to said Section in Section 790.25(3)(n), and the Construction in Section 790.25(4). We must, therefore, reverse the verdict of the trial court and find the defendant not guilty of a violation of Florida Statute 790.01, F.S.A.
Accordingly, the judgment of the trial court is reversed and remanded for further proceedings consistent herewith.
It is so ordered.
CARLTON, C.J., and ROBERTS, ERVIN, McCAIN and DEKLE, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] Said section provides:

"790.01 Carrying concealed weapons
"(1) Whoever shall carry a concealed weapon on or about his person shall be guilty of a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083.
"(2) Whoever shall carry a concealed firearm on or about his person shall be guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084.
"(3) Nothing in this section shall relate to persons licensed and regulated as defined in chaper 493, Florida Statutes, when acting in the performance of duties as provided in said chapter.
"(4) Nothing in this section shall relate to persons licensed as set forth in §§ 790.05 and 790.06, Florida Statutes."
[2] Said Section provides, in pertinent part:

"790.25 Lawful ownership, possession, and use of fireams and other weapons; penalty
"(1) Declaration of policy.  The legislature finds as a matter of public policy and fact that it is necessary to promote firearms safety and to curb and prevent the use of firearms and other weapons in crime and by incompetent persons without prohibiting the lawful use in defense of life, home, and property, and the use by United States or state military organizations, and as otherwise now authorized by law, including the right to use and own firearms for target practice and marksmanship on target practice ranges or other lawful places, and lawful hunting and other lawful purposes.
* * * * *
"(3) Exceptions.  The provisions of sections 790.05 and 790.06, Florida Statutes, shall not apply in the following instances, and despite said sections it shall be lawful for the following persons to own, possess, and lawfully use firearms and other weapons, ammunition, and supplies for lawful purposes:
* * * * *
"(n) A person possessing arms at his home or place of business;
"(4) Construction.  This act shall be liberally construed to carry out the declaration of policy herein and in favor of the constitutional right to keep and bear arms for lawful purposes. This act shall be supplemental and additional to existing rights to bear arms now guaranteed by law and decisions of the courts of Florida, and nothing herein shall impair or diminish any of such rights. This act shall supersede any law, ordinance, or regulation in conflict herewith."
[3] 174 So.2d 546 (Fla. 1965). See also Finch v. Fitzpatrick, 254 So.2d 203 (Fla. 1971); Walsingham v. State, 250 So.2d 857 (Fla. 1971); In re: Sale's Estate, 227 So.2d 199 (Fla. 1969); Mounier v. State, 178 So.2d 714 (Fla. 1965); Victer v. State, 174 So.2d 544 (Fla. 1965); Green v. State ex rel. Phipps, 166 So.2d 585 (Fla. 1964); North American Company v. Green, 120 So.2d 603 (Fla. 1960); State ex rel. McCoy v. Bell, 91 So.2d 193 (Fla. 1957); Jones v. City of Sarasota, 89 So.2d 346 (Fla. 1956).
[4] See French v. State, 279 So.2d 317 (Fla. App.4th 1973).
[5] 262 So.2d 661 (Fla. 1972).
[6] Id. at 668.