483 A.2d 542

**COMMONWEALTH of Pennsylvania**

v.

**Albert CARR, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 1984.

Filed Oct. 12, 1984.

Petition for Allowance of Appeal Denied May 6, 1985.

460

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WIEAND, JOHNSON and LIPEZ, JJ.

JOHNSON, Judge:

Albert Carr was tried on various criminal charges in the Municipal Court of Philadelphia but was found guilty only of possessing an unlicensed firearm in violation of a particular section of the Uniform Firearms Act set forth at 18 Pa.C.S. § 6106(a).[1] After a fine and sentence of probation had been imposed, Carr filed a petition for certiorari in the Court of Common Pleas. This petition was denied, and an appeal was taken to this Court in which Carr contends (1) that the evidence was insufficient to sustain the conviction

---

1. The Municipal Court sustained a demurrer to related charges of criminal conspiracy, possession of a controlled substance, and carrying a firearm on a public street.

and (2) that the firearm should have been suppressed as the product of an unlawful arrest. Finding no merit in these contentions, we affirm the conviction.

On April 22, 1981, members of the Philadelphia Police Department obtained and executed a search warrant for controlled substances believed to be stored upon and sold from a gasoline service station at 2000 North Broad Street in the City of Philadelphia. Although the owner was then known only by description, he was subsequently identified as Mr. Cummings. When police arrived they found a group of approximately eight males standing in front of the bay area. As these men were being led into the service station building so that the search could be conducted without interference, Appellant Carr was observed dropping a loaded .32 caliber revolver into a cardboard box. He conceded at trial that he had been carrying the revolver when the police arrived. He testified, however, that the service station was his place of employment and that he was working when he was arrested.

Carr argues on appeal that Mr. Cummings' service station was "his fixed place of business" and, therefore, he was permitted to carry a loaded firearm without a license at the service station because of a specific exemption contained in 18 Pa.C.S. § 6106(a).

■ Possession of a firearm without a license is made an offense by 18 Pa.C.S. § 6106(a), which provides as follows:

> (a) Offense defined.—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefore as provided in this subchapter.

The Statutory Construction Act at 1 Pa.C.S. § 1903(a) states in relevant part that "(w)ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." "His" as used in 18 Pa.C.S. § 6106(a) is a possessive pronoun connoting ownership or control over the "fixed place of business." The gasoline service station clearly was the fixed place of busi-

ness of the proprietor, Mr. Cummings, and not the place of business of Appellant Carr because Carr had no controlling, proprietary, or possessory interest in the service station. Our legislature could not have intended to permit every employed individual in the Commonwealth to carry without a license a concealed, loaded firearm on the job site.

Assuming *arguendo* that § 6106(a) contains some ambiguity, the Statutory Construction Act at 1 Pa.C.S. § 1921 requires that every statute "be construed, if possible, to give effect to all its provisions" and 1 Pa.C.S. § 1922(2) permits the presumption that the legislature "intends the entire statute to be effective and certain." As this court recently stated:

> The Legislature is presumed to have intended to avoid mere surplusage in the words, sentences and provisions of its laws. Courts must therefore construe a statute, if possible, so as to give effect to every word.

*Habecker v. Nationwide Ins. Co.*, 299 Pa.Super. 463, 471, 445 A.2d 1222, 1226 (1982).

In addition to the "abode or fixed place of business" exceptions as set forth in 18 Pa.C.S. § 6106(a), subsection (b) of section 6106 lists ten specific exceptions including:

> (6) Agents, messengers, and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties.

If under 18 Pa.C.S. § 6106(a) all employees were permitted to carry concealed firearms without a license while on the job, 18 Pa.C.S. § 6106(b)(6) would be mere surplusage. There would have been no need for the legislature to refer to employees of business firms in section 6106(b)(6). In order to give full effect to every word of section 6106(b)(6), the reference to "his ... fixed place of business" in section 6106(a), must be limited to those persons who have a controlling, proprietary, or possessory interest in their place of business.

Up until this time no appellate court in Pennsylvania has decided what the legislature meant by "his ... fixed place of business" in 18 Pa.C.S. § 6106(a). Similar language in gun control statutes of other jurisdictions which have adopted the Uniform Firearms Act has been interpreted by the courts, however.

In *People v. Free*, 112 Ill.App.3d 449, 68 Ill.Dec. 81, 445 N.E.2d 529 (1983) the court reviewed a conviction for unlawful use of weapons. Under Section 24–1(a)(10) of the Illinois Criminal Code of 1961 [Ill.Rev.Stat., ch. 38, § 24–1(a)(10) ] a person commits the offense of unlawful use of weapons if he knowingly:

> Carries or possesses on or about his person ... except when on his land or in *his* own abode or *fixed place of business*, any pistol, revolver, stun gun or taser [sic] or other firearm. (Emphasis added.)

Free was charged with violating Section 24–1(a)(10) when he carried a pistol into the restaurant where he worked and its adjoining parking lot. The court found that Free did not come within the statute's exception. In explaining the court's holding, Justice Green, speaking for the court, stated:

> Unless the employee carrying the weapon needs to use the weapon in his employment, such as is the case with a guard or nightwatchman, little authority supports the view that the employee comes within statutory exemptions similar to that in section 24–1(a)(10) ... (L)egislative bodies cannot be assumed to have intended to permit all employees to carry weapons while at work.

112 Ill.App.3d at 452–53, 68 Ill.Dec. at 83–84, 445 N.E.2d at 531–32.

In *Berkley v. United States*, 370 A.2d 1331 (D.C.Cir. 1977), the defendant was found guilty of violating a weapons statute similar to that of Pennsylvania and Illinois and argued that he was on his place of business. The defendant was a lab technician in the blood unit of a local hospital and was in possession of a handgun in the hospital when he was arrested. The court of appeals affirmed his conviction

stating, "it cannot be assumed that [Congress] intended, in a jurisdiction where there are countless numbers of employees reporting every day to governmental agencies, to write in an exception permitting every employee to carry a loaded pistol while working." 370 A.2d at 1333. The court stated that the fixed place of business exemption was applicable only to those who have a controlling, proprietary or possessory interest in the business premises in question. Since the defendant had no such interest in the hospital's blood unit the defendant's conviction was affirmed.

In *State v. Valentine,* 124 N.J.Super. 425, 307 A.2d 617 (1973), the defendant who worked as a manager of a bar, was convicted of carrying a weapon in a public place without a permit. The defendant argued that he was about his place of business and therefore was exempted from the weapons statute. The appellate court noted that the defendant had no proprietary interest in the bar and there was no evidence that the revolver had been acquired by the owner of the bar and in the possession of the defendant in connection with the operation of the business. The defendant's conviction was affirmed.

In *People v. Francis,* 45 A.D.2d 431, 358 N.Y.S.2d 148 (1974), the defendant, who worked in U.S. Post Office attached to Kennedy Airport, was arrested while on his job with a pistol in his possession. The court stated that the defendant had no authority or delegation to carry the revolver and the possession of the gun was not in any way in furtherance of any function or duty being performed by him for the postal service. His conviction was affirmed.

At first blush the case of *Peoples v. State of Florida,* 287 So.2d 63 (1973) appears to be *contra* to the decisional law in Illinois, the District of Columbia, New Jersey and New York. The Supreme Court of Florida in that case reversed a judgment of conviction for carrying a concealed firearm. The relevant gun control statute in Florida exempted "(a) person possessing arms at his home or place of business." Fla.Stat. § 790.25(3)(n). In *Peoples,* however, there was unrebutted testimony that the defendant was *both* a resi-

dent and an employee of the place of business where he was arrested. The Florida court did not even have to address the question of whether Peoples, as an employee, could carry a concealed firearm at the business establishment where he worked since the place where Peoples worked was also his home.

There is little case law from other jurisdictions supporting the proposition that an employee of a retail establishment falls within the "place of business" exception to criminal statutes which generally prohibit the carrying of concealed weapons.[2] The Court of Criminal Appeals of Texas in *Flores v. State*, 486 S.W.2d 577 (1972) reversed a conviction of an employee of a cocktail lounge who had a pistol in his possession while carrying out his duties of employment at the lounge. The statute in effect when the defendant Flores was charged[3] stated that Article 483 dealing with unlawfully carrying arms was not applicable to a person "on one's own premises or place of business." According to the Court of Criminal Appeals the trial court in *Flores* erred when it refused to submit a charge to the jury that would have called for acquittal if the jury found that Flores was employed by the cocktail lounge and carrying out the duties of his employment at the time of his arrest.

In the instant case there is not a scintilla of evidence that Carr was carrying a loaded revolver at the gasoline service station in furtherance of any legitimate employment function. We agree with the great weight of authority from other jurisdictions that limits the right of individuals to carry concealed firearms on the job site without a license. The public interest would not be served by permitting millions of employed Pennsylvanians to carry a loaded pistol on the job.

■ An additional argument raised by Carr suggests that the gun which he dropped into the cardboard box should have been suppressed because he was forced to abandon it

2. For a detailed discussion of this issue see 57 A.L.R.3d 938.
3. Article 484 V.A.P.C.; repealed by Acts 1973, 63rd leg., ch. 399 § 3.

when the police illegally attempted to move Appellant and other men into the garage bay. Unless the abandonment is "coerced by unlawful police action," the property abandoned is admissible. *Commonwealth v. Shoatz*, 469 Pa. 545, 553, 366 A.2d 1216, 1220 (1976). Since we believe the police acted lawfully in the instant case, we affirm.

In *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981) the police, while executing a valid warrant to search a home for narcotics, detained a suspect found descending the front steps outside the home and requested his assistance in gaining entry to the premises. After narcotics had been found in the basement, the police arrested the suspect and searched him finding an envelope containing 8.5 grams of heroin. The Court in *Summers* held that the initial detention of the suspect during the execution of a valid search warrant did not violate the suspect's Fourth Amendment right to be secure against an unreasonable seizure of his person since the warrant implicitly carried with it the limited authority to detain persons on the premises while a proper search was being conducted.

One reason set forth by the court in *Summers*, to support this limited authority to detain persons on the premises, was the desire to minimize the potential risks to the police officers on the scene. Justice Stevens, speaking for the majority stated:

Although no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation. (footnote omitted)

*Id.* at 702–703, 101 S.Ct. at 2594, 69 L.Ed.2d at 349–350. *See also Commonwealth v. Reicherter*, 317 Pa.Super. 256, 261, 463 A.2d 1183, 1185 (1983).

The instant case, like *Summers*, involves the execution of a warrant to search for narcotics. The police had every

right to order that Carr and the other individuals present move into the garage bay based on the police officers' concern for their personal safety. The loaded revolver, which Carr dropped into a cardboard box, was not abandoned because of illegal police activity.

The judgment of sentence is affirmed.

WIEAND, J. filed a dissenting opinion.

WIEAND, Judge, dissenting:

I agree with the majority that it is not a good law which permits employees to carry unlicensed firearms at their "fixed place[s] of business." I disagree, however, that this is adequate reason to rewrite a criminal statute duly enacted by the legislature. Thus, my dissent.

Albert Carr was tried on various criminal charges in the Municipal Court of Philadelphia but was found guilty only of possessing an unlicensed firearm in violation of 18 Pa. C.S. § 6106(a).[1] After a fine and sentence of probation had been imposed, Carr filed a petition for certiorari in the Court of Common Pleas. His petition was denied. He then filed an appeal to this Court in which he contends, inter alia, that the evidence was insufficient to sustain his conviction.

"When appraising the sufficiency of evidence, we apply a two-step analysis. First, we must regard the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the fact finder could properly have based its verdict. Next, we inquire whether that evidence, together with all reasonable inferences drawn from it, was sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Grabowski*, 306 Pa.Super. 483, 486–487, 452 A.2d 827, 829 (1982). See: *Commonwealth v. Diaz*, 319 Pa.Super. 538, 539, 466 A.2d 674, 675 (1983); *Commonwealth v. Carter*, 304 Pa.Super. 142, 144, 450 A.2d 142, 143 (1982); *Commonwealth v. Allen*, 287 Pa.Super. 88, 94, 429 A.2d 1113, 1115 (1981). In making a determination

1. The court sustained a demurrer to companion charges of criminal conspiracy, possession of a controlled substance, and carrying a firearm on a public street.

of the sufficiency of the evidence, we consider all the evidence received, whether or not the trial court's evidentiary rulings thereon were correct. *Commonwealth v. Waldman*, 484 Pa. 217, 222–223, 398 A.2d 1022, 1025 (1979); *Commonwealth v. Gray*, 322 Pa.Super. 37, 40, 469 A.2d 169, 170 (1983); *Commonwealth v. Fields*, 317 Pa.Super. 387, 395, 464 A.2d 375, 379 (1983); *Commonwealth v. Robinson*, 316 Pa.Super. 152, 155, 462 A.2d 840, 841 (1983).

On April 22, 1981, members of the Philadelphia Police Department obtained and executed a search warrant for controlled substances believed to be stored in and sold from a service station at 2000 North Broad Street in the City of Philadelphia. Although the owner was then known only by description, he was subsequently identified as Mr. Cummings. When police arrived they found a group of approximately eight males standing in front of the bay area. As these men were being led into the service station building so that the search could be conducted without interference, Carr was observed dropping a loaded, .32 caliber revolver into a cardboard box. He conceded at trial that he had been carrying the revolver when the police arrived. He testified, however, that the service station was his place of employment and that he had been working at the time of his arrest. Although the trial court was free to disbelieve appellant's testimony, the fact is that the Commonwealth's evidence also established that the service station was Carr's place of employment. Officer Agapito Osano, while testifying as a Commonwealth witness, said: "During the course of the investigation, it was determined that Mr. Carr worked for Mr. Cummings."

Possession of a firearm without a license is made an offense by 18 Pa.C.S. § 6106(a), which provides as follows:

"No person shall carry a firearm in any vehicle or concealed on or about his person, *except in his place of abode or fixed place of business*, without a license thereof as provided in this subchapter." (emphasis added).

The key to the decision in this case is the exception which permits a person to carry an unlicensed firearm in his or her "fixed place of business."

We are admonished when interpreting the Crimes Code, to construe the provisions thereof "according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S. § 105. The general purposes of the Crimes Code are stated at 18 Pa.C.S. § 104 and include, as relevant to the issue now before the Court, the following:

(4) To give warning of the nature of the conduct declared to constitute an offense. . . .

The legislature, when it incorporated the provisions of Section 6106 of the Uniform Firearms Act into the Crimes Code provided us with no statement of purpose therefor. It would appear from the language used, however, that the legislature intended generally to prohibit the carrying of concealed firearms outside one's place of abode or fixed place of business without a license to do so. Possession of a firearm in one's living quarters or fixed place of business was deemed to present no threat of substantial harm to individual or public interest and, therefore, was determined not to be criminal. The term "place of abode," it seems clear, was intended to include living quarters whether owned or leased and irrespective of the size or number of rooms. What, then, is meant by "fixed place of business"? May a person legally possess an unlicensed firearm in his or her fixed place of business only if he or she has a proprietary interest?

The term "business" is defined by the American College Dictionary as "one's occupation, profession or trade." A literal interpretation of "place of business," therefore, is that space which is set aside or used for the purpose of one's occupation, profession or trade. Can it be said, nevertheless, that the legislature, in enacting the "fixed place of business" exception, intended to add by necessary implica-

tion a requirement that one have a proprietary interest in the fixed place of business? I think not.

In the first place, Section 105 requires that the term "place of business" be construed according to its "fair import." This, as we have seen, is the place where one engages in his "occupation, profession or trade." Section 105 of the Crimes Code also directs that the provisions of the Code be construed consistently with a legislative intent "to give fair warning of the nature of the conduct declared to constitute an offense." 18 Pa.C.S. § 104(4). In order to accommodate this direction, any ambiguity concerning the ambit of a penal provision must be construed in favor of the accused. *Commonwealth v. Driscoll*, 485 Pa. 99, 107, 401 A.2d 312, 316 (1979) (plurality opinion); *Commonwealth v. Darush*, 256 Pa.Super. 344, 348, 389 A.2d 1156, 1158 (1978); *Commonwealth v. Cluck*, 252 Pa.Super. 228, 238, 381 A.2d 472, 477 (1977); *Commonwealth v. Cunningham*, 248 Pa. Super. 219, 222, 375 A.2d 66, 67 (1977). See also: *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381, 389 (1980); *Commonwealth v. Allsup*, 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978). This is necessary to avoid the injustice of convicting a person without clear notice to him that contemplated conduct is unlawful. *Commonwealth v. Broughton*, 257 Pa.Super. 369, 377, 390 A.2d 1282, 1286 (1978). See also: *Commonwealth v. Bellis*, 324 Pa.Super. 506, 472 A.2d 194 (1984). It also serves to prevent courts from creating offenses which the legislature did not intend to create. *Commonwealth v. Cluck, supra.*

When the provisions of 18 Pa.C.S. § 6106(a) are construed strictly and all ambiguity is resolved in favor of appellant, it must necessarily follow that appellant's possession of an unlicensed firearm at the service station where he was then engaged in his occupation was not a criminal act. It was not within the ambit of the proscription defined by Section 6106(a) of the Crimes Code. The statutory exception is not limited only to situations in which a person owns the premises or has a proprietary interest in the business there conducted.

The majority argues that a literal interpretation of 18 Pa.C.S. § 6106(a) would be inconsistent with 18 Pa.C.S. § 6106(b). It is argued that the later subsection would become surplusage unless we added the requirement of a proprietary interest to the "fixed place of business" exception of 18 Pa.C.S. § 6106(a). Closer examination, however, discloses that the "fixed place of business" exception of § 6106(a) and the provisions of § 6106(b)(6) complement each other and can readily be construed to give effect to both. The "fixed place of business" means exactly what it says: it is not criminal to carry an unlicensed firearm on one's person at his or her fixed place of business. The provisions of § 6106(b)(6), on the other hand, except from the statutory proscription those employees of common carriers, banks and businesses whose duties require them to protect moneys, valuables and property in the discharge of their duties. This exception is not limited to carrying a firearm at one's fixed place of business; instead, it encompasses the carrying of a firearm wherever the employee's duties may require him to go, without geographical limitation.[2]

The majority, in my judgment, places an unwarranted connotation on the word "his" in order to add an "ownership or control" requirement to the statute's "fixed place of business" exception. The word "his" is a pronoun; in Section 6106(a), the pronoun is used as an alternative reference to the noun, "person." In short, it refers to a person who would carry a firearm, hence an accused. The statute provides that such a person may carry a firearm on "his person" in "his ... fixed place of business." This does not translate into a right to carry a firearm in one's fixed place of business only if one has "ownership or control" over the business. In order to add such a qualification to the statute's "fixed place of business" exception, the majority has engaged in pure judicial legislation.

2. This is a very broad exception. Whether there are any employees whose duties do not require them to protect the "money, valuables and property," of their employers and who they are have not been argued and need not now be decided.

The limitation adopted by the majority implies that an employee can have no "fixed place of business." If this is correct, then the exception is inapplicable to corporate officers and employees unless they also happen to have a proprietary interest in the business. One may also ask under the majority's interpretation, how shall we apply the "fixed place of business" exception to professional offices? Does it apply only to the partners of a law firm or medical clinic, or does it apply also to associates, secretaries and nurses who work late? How shall we apply the exception, if at all, to government offices and warehouses? More pertinently, does the exception allow the carrying of an unlicensed firearm by the faithful service station employee who works alone at night in relief of the owner? What reasonable difference allows the sole proprietor to carry an unlicensed firearm while at work during the day but does not permit the same protection to an employee who relieves the owner at night.

The majority observes quite properly that the courts of sister jurisdictions are divided in their interpretations of the fixed place of business exception contained in the Uniform Firearms Act. See: Annotation of Cases at 57 A.L.R.3d 938. I find it irrelevant that some courts have determined to add thereto a requirement that a person have a proprietary interest. Such a requirement, quite clearly, does not appear in the Pennsylvania statute; and this Court is importuned to construe the statute according to the fair import of its terms.

If we are to interpret the "fixed place of business" exception according to its fair import and consistently with the Code's stated purpose of giving fair warning of conduct which is declared criminal, we would do well to interpret the statutory language literally. Only in this manner can we render the statutory proscription unambiguous. Only in this manner can we be certain that we are not judicially condemning as criminal an act not so intended by the legislature.

The legislature has said that it is not criminal for a person to carry a firearm on his person in his living quarters or in the fixed place where he engages in his "occupation, profession or trade." Because appellant carried an unlicensed firearm only at the service station which constituted his "fixed place of business," I would hold that he did not violate the proscription contained in 18 Pa.C.S. § 6106(a). I would leave it to the legislature to rewrite a law which both the majority and I deem an unwise exception to the ban on carrying unlicensed firearms.