## Commonwealth v. Derrickson

*Thomas A. Placey, assistant district attorney,* for the Commonwealth.
*Ellen K. Barry,* for defendant.

BAYLEY, *J.,* January 12, 1993—Defendant is charged with a count of unlawful possession of a small amount of marijuana[1] and unlawful possession of drug paraphernalia.[2] Pursuant to Pa.R.Crim.P. 306 he filed an omnibus motion for pretrial relief to suppress evidence. A hearing was held on January 5, 1993. We find the following facts.

As a member of the tri-county drug task force, Officer Jeffrey Huff, of the Lower Allen Township Police, executed a search warrant at a private home on February 12, 1992. Nine officers participated in the search. When the officers arrived the subject of the investigation who lived at the home was there along with three other people, one of whom was defendant, Alan Derrickson. The officers handcuffed all four individuals and seated them while a lengthy search of the premises was made during

---

1. 35 P.S. §780-113(a)(31)(i) and (ii).
2. 35 P.S. §780-113(a)(32).

which a substantial amount of illegal drugs was seized. After about an hour and a half, defendant was uncuffed because, as Officer Huff testified, he was no longer needed. The officer told him that he was going to walk him out to his car and allow him to go home. Officer Huff walked defendant to his car because, as he testified, he wanted to make sure he left the area. As they went outside to the driveway where the car was located, the officer asked defendant if he had any drugs or paraphernalia in the car, and if he would let him look through the vehicle. Defendant said he had a pipe in the glove box. He then got into the car, took a pipe out of the glove box, and gave it to the officer. It contained marijuana residue. The officer then asked defendant if he had more drugs and if he could search the vehicle. Defendant said "yes." He went into the car again, retrieved a film canister from the glove box which contained a small amount of marijuana, and handed it to the officer. The officer again asked if he could search the vehicle at which point defendant told him that nothing more was in the car. The officer searched the car and nothing was recovered. Only then was defendant allowed to leave.[3] At no point was defendant given his *Miranda* rights nor did he ever waive such rights.[4]

Officer Huff testified and stated that he had no legal cause to search defendant's car before defendant told him he had drugs and gave him the marijuana pipe. Defendant testified he was handcuffed in the house for an hour and a half. After he was uncuffed, Officer Huff told him that he was going to walk him out to his car and allow him to go home. When they got outside, the officer asked him if he had any drugs in the car and if he could

---

3. The within charges were filed on a later date.

4. *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 886 S.Ct. 1602 (1966).

search the car. Defendant testified he said "yes," and he got the pipe and marijuana because, "I figured they had—you know that's part of the deal—they had to do that."

The Commonwealth maintains that the detention of defendant in the house while the search warrant was executed was legal based on *Commonwealth v. Carr,* 334 Pa. Super. 459, 483 A.2d 542 (1984), which is supported by *Michigan v. Summers,* 453 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). It further maintains that defendant was released from detention, after which he voluntarily consented to the search of his vehicle by himself getting the marijuana pipe and the marijuana. As the Supreme Court of Pennsylvania recently stated in *Commonwealth v. Slaton,* 530 Pa. 207, 215, 608 A.2d 5, 9 (1992):

"In *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 1041, 36 L.Ed.2d 854 (1973), the U.S. Supreme Court found that voluntary consent to a search was sufficient to overcome the [search] warrant requirement. Voluntariness, the court explained, is a question of fact to be determined from all the circumstances. *Id.* at 249, 93 S.Ct. at 2059. Consent must be freely and intelligently given."

We believe the Commonwealth misconstrues the issue as resting solely on whether defendant voluntarily consented to a search of his car. Officer Huff did not simply ask defendant if he could search his vehicle. Rather, the initial request to search was coupled with a question asking defendant if he had any drugs or paraphernalia in his car. Defendant got the marijuana pipe *only after he admitted* he had drugs or paraphernalia in the car. After he gave the marijuana pipe to the officer, the next request to search was also coupled with a question as to whether he had more drugs in the car. After answering "yes," defendant got the marijuana for the officer. Thus, it was the admissions in response to the interrogation of defendant that prompted him to get the marijuana pipe and then the marijuana from the car.

We conclude that defendant was detained and his freedom was still restricted in a significant way when he was interrogated while in the driveway by Officer Huff as to whether he had any drugs or paraphernalia in his car. In *Commonwealth v. Horner,* 497 Pa. 565, 575, 442 A.2d 682, 686 (1982), the Supreme Court of Pennsylvania restated the law of Pennsylvania that it announced in *Commonwealth v. O'Shea,* 456 Pa. 288, 292, 318 A.2d 713, 715 (1974):

"[T]he test for custodial interrogation 'does not depend upon the subjective intent of the law enforcement officer-interrogator, but upon whether the suspect is physically deprived of his freedom of action in any significant way or is *placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation....'* "

The present case does not involve a situation where defendant was questioned by police in a setting where he was told he was free to leave *and* it was clear that he could have left and thereby refused to answer questions. See *Commonwealth v. Morgan,* 416 Pa. Super. 145, 610 A.2d 1013 (1992). Rather, defendant was detained and handcuffed for an hour and a half while law enforcement officers conducted a search of a premises in which he was a visitor. He was then uncuffed and told by Officer Huff that he was going to walk him to his car and allow him to go home. However, *before* he was allowed to leave, Officer Huff *interrogated* him as to whether he had any drugs or paraphernalia in his car. At that point defendant was not yet out of the clutches of the police officer; therefore, we conclude the officer instituted the interrogation before defendant was actually allowed to leave. Furthermore, the interrogation was *before* defendant could have reasonably believed that his freedom of action and movement were not restricted. One cannot view the period of interrogation in a vacuum without considering what defendant had just gone through. Under

the circumstances, Officer Huff's interrogation without giving *Miranda* warnings and without obtaining a waiver of rights during a time when defendant reasonably believed he was restricted by the interrogation, requires the suppression of all evidence gained as a result of that interrogation. *Commonwealth v. Horner, supra.*

Even if we treat the case in the context of a consent search, the suppression of the evidence is required. Assuming under *Commonwealth v. Carr, supra,* that defendant's entire period of detention in the house was legal, there was no basis to further detain and interrogate him after he was taken out of the house but before he was allowed to leave.[5] Yet, Officer Huff accompanied defendant to the driveway and before he was allowed to leave he interrogated him regarding whether he had drugs in his car. We agree with defendant that at that point he believed he had to consent to a search. Since his continued detention and interrogation outside of the house was illegal, see *Commonwealth v. Lopez,* 415 Pa. Super. 252, 609 A.2d 177 (1992), all evidence gained as a result of the recovery of the paraphernalia and drugs must be suppressed.[6]

For the foregoing reasons, we enter the following

## ORDER OF COURT

And now, January 12, 1993, the drug paraphernalia and marijuana seized on February 12, 1992, is suppressed.

---

5. There was certainly no potential risk to the police officers at the point when the interrogation took place. See *Commonwealth v. Carr, supra,* 334 Pa. Super. at 466, 483 A.2d at 495.

6. We hasten to agree with the concurring opinion of Judge Hoffman in *Commonwealth v. Parker,* 422 Pa. Super. 393, 408, 619 A.2d 735, 742 (1993), that *"Lopez,* however, does not support the broad proposition that a police request to search constitutes a detention-triggering Fourth Amendment protection."