[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO DISMISS
The Defendant has filed a motion to dismiss the information in the above-entitled matter, alleging insufficiency of cause for continuing the prosecution or placing the Defendant on trial. The motion was made pursuant to C.P.B. 41-8(5), and was filed with the court on June 8, 1999.
The Defendant was arrested in Waterford, Connecticut on October 6, 1998 and charged with the felony of carrying a pistol without a permit, in violation of C.G.S. 29-35.
The parties have agreed to a stipulation of facts, which was filed on December 9, 1999. In accordance therewith, the State and the Defendant agree that the following facts are undisputed:
On October 6, 1998, the Defendant was employed as a welder by Unified Sports, Inc. and was working at his job at the company's manufacturing plant in Waterford. On that date, the Defendant was summoned to the supervisor's office at the plant. There, Waterford Police found that the Defendant was wearing a firearm in a holster upon his person. The weapon located on the Defendant's person was a pistol, as defined by C.G.S. 29-27.
The Defendant did not have a permit to carry a pistol (pursuant to C.G.S. 29-28b) on October 6, 1998. He was arrested by Waterford Police on the felony charge which is the subject of this motion.
The parties have also stipulated that the Defendant was not an owner or proprietor of Unified Sports, Inc. and did not have any ownership interest in the premises where he was working on October 6, 1998.
 DISCUSSION
C.G.S. 29-35 provides that "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28."
The Defendant maintains that his conduct on October 6, 1998 did CT Page 992 not violate C.G.S. 29-35, because he was carrying a pistol upon his person at the Unified Sports, Inc. manufacturing plant where he was employed as a welder. He contends that because this location was his "place of business," he was not required by the statute to have a permit in order to carry the firearm there.
The term "place of business" is not defined in C.G.S. 29-35. "When a term is not defined within a statute, the ordinary meaning of the term is used." State v. Harrison, 228 Conn. 758,762, 638 A.2d 601. (1994). While penal statutes must be strictly construed, ". . . such construction must accord with common sense and commonly approved uses of the language." (Internal quotation marks omitted.) State v. Jason B., 248 Conn. 543, 550,729 A.2d 760 (1999).
In support of his legal argument, the Defendant points to the definition for "place of business" which appears in Black's LawDictionary. The term is defined therein as "[t]he location at which one carries on his business or employment." The Defendant also offers language from our Supreme Court's decision in Statev. Feltovic, 110 Conn. 303 (1929). That case dealt with the murder of an AP store manager, and the legal issues of self defense, and the duty to retreat. The court noted in the Feltovic
decision that the store manager had been attacked "in his place of business."
The Defendant relies on the forgoing in arguing that he was exempt from the permit requirement because the Unified Sports manufacturing plant qualifies within the meaning of the statute as his "place of business." The court, however, does not agree.
C.G.S. 29-35 was enacted in 1923, and the law's legislative history is not available. Nonetheless, it is very apparent that Connecticut's firearm permit statutes were enacted to address a highly compelling public safety interest.
"General Statutes 29-28 through 29-38 clearly indicate a legislative intent to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament to be entrusted with a weapon." (Internal citations and quotation marks omitted.) Dwyerv. Farrell, 193 Conn. 7, 12 (1984). These laws deal with a governmental or general public interest ". . . that could be characterized as extraordinary." Rabbit v. Leonard,36 Conn. Sup. 108, 116 (1979). CT Page 993
With the forgoing in mind, the court finds it inconceivable that our General Assembly intended the statutory interpretation advanced by the Defendant. If all full or part-time employees in Connecticut were authorized to carry firearms at work, without any assessment of their suitability to engage in that lethal conduct, the obvious purpose of the permit statutes would be defeated. If every contract of employment was construed to include the automatic legal right for a worker to be armed at his or her job site during working hours, the resulting chaos and danger in this state would be incalculable.[1]
The court attaches great significance to the statutory language "within his . . . place of business." Our General Assembly did not employ such phrases as "place of employment," "place of work". or "job site" in C.G.S. 29-35. Had it intended to legalize the conduct which the Defendant claims the law permits, the legislature would have done so.
The court interprets the limited exception which is created by the language of C.G.S. 29-35 to apply only to those persons who have a proprietary or possessory interest in defending their dwelling house or place of business. While this case is apparently one of first impression in Connecticut, court decisions in several other jurisdictions support this conclusion.
A New York court determined that a U.S. Postal Service employee was not considered to be in his place of business" when he carried a revolver upon his person at the post office where he worked. People v. Francis, 45 App.Div.2d 431, 358 N.Y.S.2d 148 (1974). The court noted that the Defendant had no prior authorization to carry the firearm, and that there was no indication that the weapon was to be used in furtherance of his employment.
In State v. Valentine, 124 N.J. Super. 425, 307 A.2d 617
(1973), the court held that the statutory exception permitting a person to keep or carry a firearm at his place of business or dwelling did not extend to the manager of a bar which was owned by another person. The Defendant, a bartender, was in charge of the business from 6 p. m. until 2 a.m., but had no ownership interest in the establishment. In ruling that the permit exception did not apply to the Defendant, the court stated that "[t]he bar was not the Defendant's business. He held no proprietary interest therein. By extending the statutory exception to include a manager, the door is opened to a CT Page 994 multiplicity of situations where the term manager might be invoked to sanction possession of a weapon otherwise proscribed by [the law]." State v. Valentine, supra, p. 619.
The pistol permit exception authorized for a person in "his place of business" was held not to apply to the employee of a Michigan industrial corporation who carried a gun at the plant where he worked. People v. Clark, 21 Mich. App. 712,176 N.W.2d 427 (1970). The court there found that. . . . . [t]he purpose of the exemptions was to allow persons to defend those areas in which they have a possessory interest." People v. Clark, supra, p. 430.
Firearms laws in Illinois and Pennsylvania also contain exceptions from the pistol permit requirements for persons in their "fixed place of business." In People v. Free,445 N.E.2d 529 (Ill.App. 1983). a dishwasher was held not to be in his fixed place of business after he was found carrying a gun at the restaurant where he worked. The Illinois court concluded that the legislature did not intend to permit all employees to carry weapons while at work. "Rather, we deem the committee and the legislature to have intended that a proprietor have this right in the proprietor's `fixed place of business.'" People v. Free,
supra, p. 532.
Likewise, in Commonwealth v. Carr, 483 A.2d 542 (Pa.Super. 1984), the Defendant was a service station employee arrested for carrying a pistol at the Philadelphia gas station where he worked. The court determined the Defendant did not to fall-under the "fixed place of business" requirement of the Pennsylvania statute. It held that the exception". . . must be limited to those persons who have a controlling, proprietary, or possessory interest in their place of business." Commonwealth v. Carr,
supra, p. 544.
In Scott v. U.S., 392 A.2d 4 (D.C.App. 1978), the Defendant, who was an employee of a used automobile dealership, was charged with carrying a pistol without a permit at a car lot where he worked in the District of Columbia. That jurisdiction's statute was quite similar to C.G.S. 29-35.[2] The court ruled that although the law did not expressly define the phrase "place of business," it impliedly created an exception allowing the person "in charge" of premises to carry a pistol without a license. "The exception refers to a proprietary or possessory, not merely managerial interest; i.e., in `his dwelling house or place of CT Page 995 business or on other land possessed by him.'" (Emphasis in original). Scott v. U.S., supra, p. 6. The court added that: "[i]t is clear that Congress, in passing [Section 22-3204], intended drastically to limit the possession of guns in the District of Columbia . . . and we are convinced . . . that the exception is applicable only to those who have a controlling interest in the business premises. . ." (Internal citation and quotation marks omitted.) Scott v. U.S., supra, p. 6. The court concluded that the Defendant was not "within his place of business" for purposes of an exception.
Similarly, in the case of Berkley v. U.S., 370 A.2d 1331
(D.C.App. 1977), a laboratory technician working in a hospital was arrested after allegedly carrying a pistol there without a permit. The District of Columbia court held that ". . . it cannot be assumed that [Congress] intended, in a jurisdiction where there are countless numbers of employees reporting everyday to governmental agencies, to write in an exception permitting every employee to carry a loaded pistol while working." Berkley v.U.S., supra, p. 1333. The court added that "[t]he common understanding of `place of business' read in context with `dwelling house'. . . is one of a protectible possessory interest." The court also found ". . . that the exception is applicable only to those who have a controlling, proprietary or possessory interest in the business premises in question."Berkley v. U.S., supra, p. 1333. Here, too, the District of Columbia court found that the Defendant was not "within his place of business" for purposes of exemption from the pistol permit requirement.
In the case at bar, it is undisputed that the Defendant has no proprietary or ownership interest in Unified Sports, Inc., or in the manufacturing plant premises where the alleged crime occurred. There is no evidence that he was ever requested or authorized by his employer to carry a pistol there.
Because of this, the court rejects the Defendant's legal claim that his place of work constituted "his place of business," and also finds that his conduct in carrying a pistol there without a permit on October 6, 1998 was not authorized under the exception language of C.G.S. 29-35.
Accordingly, the Defendant's motion to dismiss for insufficiency of cause is hereby DENIED.
CT Page 996 Dated at New London, Connecticut this 21st day of January 2000.
BY THE COURT:
Dyer, J.