J-A11016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                               :            PENNSYLVANIA
                               :
         v.                    :
                               :
                               :
DARRIUS DANIELS                 :
                               :
         Appellant         :    No. 915 WDA 2022

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007854-2021

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:         **FILED: July 25, 2023**

Darrius Daniels, Appellant, appeals from the judgment of sentence of 11½ to 23 months of incarceration, imposed following his non-jury trial. He raises various challenges to the sufficiency of the evidence to convict him of unlawfully possessing a firearm in violation of 18 Pa.C.S. § 6106(a). We affirm.

On September 24, 2021, City of McKeesport Officers Sean Sluganski and Nicholas Probola investigated a report from a female that a male identified as "Country" hit her in the head with a firearm. Officer Sluganski knew Appellant as "Country" and visited Pazzo's Bar, which he knew Appellant to frequent. Officer Sluganski entered the bar's outdoor courtyard area upon arrival, where he observed Appellant "sitting at the first picnic bench" with his "back towards

_____

[*] Retired Senior Judge assigned to the Superior Court.

the picnic table[.]" N.T., 5/26/22, at 12, 13. An unidentified female was sitting at the same table, and the two "were having some kind of conversation." *Id.* at 14. A black backpack "was in between his feet." *Id.* The female was "[t]hree or four feet" from Appellant. *Id.*

Officer Sluganski and Officer Gull[1] approached Appellant and ordered him to keep his hands visible. Appellant's dog "began to approach … in an aggressive manner" and Appellant was ordered to restrain the dog. *Id.* at 15. The officers drew their firearms and Appellant "stood up and stepped backwards … away from the backpack and placed his dog between us." *Id.* at 16. Officer Sluganski perceived that, due to the layout of the courtyard area, Appellant "was going to try to start running towards the other side of the courtyard and hope [*sic*] over the fence," with the dog serving as an obstacle. *Id.* at 25. Appellant eventually leashed the dog after about fifteen seconds.

Meanwhile, Officer Probola and another officer initially went inside the bar to look for Appellant, and proceeded to the courtyard area after Officer Sluganski radioed that he had located Appellant. When he arrived, the officers were already giving Appellant orders to restrain his dog, "which [Appellant] was ignoring." *Id.* at 29. Officer Probola observed Appellant "standing within six inches of a dark colored bookbag, which was at his feet…." *Id.* Appellant continued to back away from the officers and Officer Probola was able to see

---

[1] The testimony did not include Officer Gull's first name.

that the bag "was completely unzipped" due to it being overstuffed. *Id.* at 30. The officer pointed his flashlight at the bag and observed "a black handle of a firearm." *Id.* at 31. Appellant was arrested and the firearm was recovered from the backpack. Like Officer Sluganski, Officer Probola testified that he was familiar with Appellant, stating that he has "dealt with [Appellant] on approximately three prior occasions, including approximately two or three days prior, in which he was at … Pazzo's." *Id.* at 28.

Based on this testimony, Appellant was convicted at a bench trial of one count of carrying a firearm without a license. Appellant waived his right to a pre-sentence report and was sentenced on May 26, 2022. On June 7, 2022, Appellant filed a petition requesting permission to file a post-sentence motion *nunc pro tunc*, explaining that his counsel had intended to file the motion but could not, due to an injury. Appellant also filed a copy of the post-sentence motion he wished to file. The trial court expressly granted permission to file the motion on June 13, 2022, accepting the June 7 filing as timely. *See **Commonwealth v. Dreves**,* 839 A.2d 1122, 1128 (Pa. Super. 2003) (*en banc*) ("If the trial court chooses to permit a defendant to file a post-sentence motion *nunc pro tunc,* the court must do so expressly.").

The trial court denied the post-sentence motion on July 11, 2022, and Appellant timely filed a notice of appeal from that order. Appellant complied with the order to file a Pa.R.A.P. 1925(b) statement, and the trial court authored an opinion. We now review Appellant's two issues presented on appeal:

I. Whether the evidence [was] insufficient to convict [Appellant] of Firearms Not to be Carried Without a License, where the Commonwealth failed to prove, beyond a reasonable doubt, that he constructively possessed the firearm?

II. Whether the evidence [was] insufficient to convict [Appellant] of Firearms Not to be Carried Without a License, where the Commonwealth failed to prove, beyond a reasonable doubt, that he was not at his fixed place of business at the time of the incident?

Appellant's Brief at 5.

Both claims concern the sufficiency of the evidence to convict. Our standard of review is well-settled. "When reviewing a challenge to the sufficiency of the evidence, we 'view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the [fact-finder] could have found every element of the crime beyond a reasonable doubt.'" *Commonwealth v. Santiago*, 294 A.3d 482, 484 (Pa. Super. 2023) (quoting *Commonwealth v. Thomas*, 215 A.3d 36, 40 (Pa. 2019)). The trial court as fact-finder was "free to believe, all, part, or none of the evidence presented when making credibility determinations." *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018).

Appellant's first issue challenges the element of possession. "Possession can be found by proving actual possession, constructive possession or joint constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999) (*en banc*). As Appellant was not observed handling the backpack or a firearm, and the Commonwealth does not allege that the unknown female jointly possessed the firearm, the Commonwealth's theory of possession rested on constructive possession, which "is a legal fiction, a

pragmatic construct to deal with the realities of criminal law enforcement." ***Commonwealth v. Parker***, 847 A.2d 745, 750 (Pa. Super. 2004) (quoting ***Commonwealth v. Thompson***, 779 A.2d 1195, 1199 (Pa. Super. 2001)). Constructive possession requires that the Commonwealth establish "conscious dominion" over the item, which consists of "the power to control the contraband and the intent to exercise that control." ***Commonwealth v. Macolino***, 469 A.2d 132, 134 (Pa. 1983). As with any sufficiency challenge, the Commonwealth may meet its burden through circumstantial evidence. ***Id***. "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213 (Pa. 1986).

Appellant cites ***Commonwealth v. Parrish***, 191 A.3d 31 (Pa. Super. 2018), in support of his argument. There, the police pulled over a vehicle in which Parrish was sitting in the back seat. In the front seat, police found drugs, guns, and paraphernalia. Parrish was charged with possessory offenses for those items, and we discharged due to inadequate proof of constructive possession. The evidence established only that Parrish "was merely present on the driver's side of the back seat" of the vehicle, which is not sufficient under the law to establish constructive possession. ***Id.*** at 38. Appellant maintains that the same logic applies here. In his view, all that the Commonwealth established was that he was in mere proximity to the backpack, as the officers all testified that Appellant was not seen physically touching the bag and nothing in the backpack itself was linked to Appellant.

- 5 -

It is true that, where the evidence indicates only "mere presence," the Commonwealth tends to face an uphill battle. The most common scenario is a case like **Parrish**, where items are found in a vehicle with multiple occupants. **See also Commonwealth v. Spencer**, 621 A.2d 153, 155 (Pa. Super. 1993) (finding the Commonwealth failed to establish constructive possession by the passenger, who was charged with possession of cocaine protruding from the armrest of driver's side door); **Commonwealth v. Juliano**, 490 A.2d 891, 894 (Pa. Super. 1985) (discharging the conviction where the evidence established only that the appellant "knew of the existence and location of the green satchel which had been sitting at his feet," which does not by itself establish "knowledge of the contents") (emphasis omitted); **Commonwealth v. Boatwright**, 453 A.2d 1058, 1058-59 (Pa. Super. 1982) (finding that evidence was insufficient where a firearm was discovered in left rear seat and the appellant, seated in the passenger seat, moved "towards his left rear"; this evidence established only "mere presence").

However, this is not a case where the evidence established only that Appellant was merely present and in proximity to the backpack and its contents. The trial court made a specific finding of fact concerning the backpack's location when rendering its verdict. The trial court found Appellant guilty "based on the fact that the bag was between his feet. It was not just next to him." N.T. at 62. Appellant's argument downplays this finding. He maintains that "the backpack was located on the ground between the seats of a picnic table where both [Appellant] and a woman were seated." Appellant's

- 6 -

Brief at 17. To the extent this assertion posits that the backpack was under the table, roughly equidistant from Appellant and the other person, the trial court found otherwise, and its finding is supported by the record.

The facts here are analogous to **Commonwealth v. Stembridge**, 579 A.2d 901 (Pa. Super. 1990), where Stembridge was one of three passengers in a vehicle parked in front of a convenience store. Police officers approached the driver, as one had observed the vehicle driving with inoperative rear lights. The officers asked the driver and Stembridge, seated in the right front passenger seat, to step outside. Stembridge began fidgeting and putting his hands in his pockets; thus, he was patted down and drugs were recovered. "At some point in the sequence of events, [the remaining occupant — who had been seated in the front of the car between the driver's seat and the passenger's seat —] was ordered to get out of the vehicle on the driver's side." **Id.** at 902. Shortly thereafter, one of the officers noticed something underneath the passenger side, which turned out to be drugs and paraphernalia. Stembridge was charged with possessing those items, and he argued that the Commonwealth could not establish constructive possession as he was merely present in the vehicle, and one of the other occupants may have thrown or kicked the items under the vehicle after he was ordered out of the vehicle. We disagreed, reasoning:

> [Stembridge]'s access to and control over the area in which the contraband was found was greater than that of the driver and the other passenger, inasmuch as [he] was the only one of the three to exit the vehicle on the passenger side. In addition, only [Stembridge] was observed walking back and forth near the car

and "fidgeting around." Furthermore, any uncertainty as to whether the female passenger moved from between the front seats into the right passenger seat, while it could have formed the foundation of a reasonable doubt on the part of the factfinder, does not as a matter of law create a reasonable doubt which requires us to overturn the factfinder's verdict.

*Id.* at 905 (footnote omitted).

Similarly, Appellant's access to the backpack and control over it was far greater than that of the unidentified female. Appellant's behavior was also much more than "fidgeting," as he ignored officer commands to restrain his barking dog and deliberately placed his dog between himself and the officers. Officer Sluganski speculated that Appellant may have been attempting to flee or otherwise impede law enforcement, which is a factor a court may consider. *See Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (concluding that the Commonwealth established constructive possession based, in part, on the fact that the defendant gave a police officer "five or six different names and multiple birthdates, thus exhibiting a consciousness of guilt"). The unknown female, in contrast, immediately complied. N.T. at 22 (Officer Sluganski testifying: "After I instructed her to step back[,] … she was pretty quick to step away…."). Thus, the finding of constructive possession does not rest on Appellant's mere presence and proximity to the backpack. There is sufficient circumstantial evidence to conclude that "possession … was more likely than not." *Mudrick*, 507 A.2d at 1213.

Appellant's second issue asserts that the Commonwealth failed to prove beyond a reasonable doubt that he was not in his place of business. In *Commonwealth v. Lopez*, 565 A.2d 437, 440 (Pa. 1989), our Supreme Court

held that the clause, "except in his place of abode or fixed place of business[,]" as codified in 18 Pa.C.S. § 6106(a), is an element of the crime and, thus, it must be proven by the Commonwealth beyond a reasonable doubt. In *Commonwealth v. Carr*, 483 A.2d 542 (Pa. Super. 1984), our Court examined what the General Assembly meant by the phrase "fixed place of business[.]" We held that it refers to one who has "ownership or control" over the place of business, and thus its language does not extend to employees who lack a "controlling, proprietary, or possessory interest" in the business. *Id.* at 543.

Appellant claims that "the only reasonable inference to draw from the testimony was that Pazzo's Bar was [Appellant]'s fixed place of business." Appellant's Brief at 20. Appellant portrays the testimony that he was known to frequent Pazzo's Bar as a point in his favor, because "proprietors must regularly visit their businesses, oftentimes on a daily basis, to ensure that everything is in order and to avoid collapse and ruination." *Id.*

The fact-finder could have accepted this chain of inferences, but our standard of review requires this Court to view the evidence in the light most favorable to the Commonwealth as verdict winner. We conclude that the Commonwealth was entitled to an inference that Pazzo's Bar was not Appellant's "fixed place of business." "When reviewing sufficiency[,] … this Court determines whether the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt."

*Commonwealth v. Reed*, 990 A.2d 1158, 1161 (Pa. 2010). We agree that the evidence on this element, while limited, is sufficient under the law. *See Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("*Jackson* [*v. Virginia*, 443 U.S. 307 (1979),] leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'") (citation omitted). We follow that approach. *See Commonwealth v. Holt*, 273 A.3d 514, 528 (Pa. 2022) ("Our standard of review follows … *Jackson*[.]"). We agree with the trial judge that the basic facts offered by the Commonwealth support the ultimate factual finding that Appellant did not own or have a controlling ownership interest in the bar. The court cited the testimony from the officers that "two or three days before the instant incident, officers had interacted with [Appellant] and [Appellant] informed them that he patronized Pazzo's Bar on a daily basis." Trial Court Opinion, 12/2/22, at 5. Additionally, "[Appellant] had a dog with him at the bar at the time of his arrest." *Id.* at 5-6.

We agree with the Commonwealth that Officer Sluganski's testimony that he knew Appellant to "frequent" Pazzo's "connotes that [A]ppellant often patronizes the bar as a customer." Commonwealth's Brief at 27. The fact that Appellant described himself as a customer and not an owner warrants the rational inference that he was a mere patron of the bar. Additionally, Appellant was seated outside with his dog during normal operating hours, further indicating that he was a visitor. Combined, these pieces of evidence

- 10 -

all support the trial court's rational inference that Appellant was a mere customer. We therefore agree that the Commonwealth presented sufficient evidence to establish that Pazzo's Bar was not Appellant's fixed place of business.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2023