J-S38037-22

2023 PA Super 71

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :         PENNSYLVANIA
           v.                         :
                                    :
WILFREDO SANTIAGO                 :
                                    :
          Appellant             :      No. 940 EDA 2022

Appeal from the Judgment of Sentence Entered March 2, 2022,
in the Court of Common Pleas of Northampton County,
Criminal Division at No(s):  CP-48-CR-0001959-2020.

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

OPINION BY KUNSELMAN, J.:                 **FILED APRIL 26, 2023**

Wilfredo Santiago appeals from the judgment of sentence imposing an aggregate period of seven to 14 years' incarceration, after a jury convicted him of aggravated assault and related offenses.[1]  He challenges the sufficiency of the evidence for the aggravated assault charge.  Santiago punched a police officer knocking him down four steps causing him to hit his head on the concrete sidewalk and giving him a concussion – a serious brain injury.  We affirm.

The Commonwealth correctly summarized the facts as follows:

> On July 27, 2019, . . . the Easton Police Department dispatched officers to Ferry Street after receiving a noise complaint.  N.T., 1/31/22, at 32.  One of the officers that responded, in full uniform and driving a marked patrol

---

[1] **See** 18 Pa.C.S.A. § 2702(a)(2).  While not at issue in this appeal, Santiago's related offenses are riot, 18 Pa.C.S.A. § 5501(2); obstructing administration of law, 18 Pa.C.S.A. § 5101; hindering apprehension, 18 Pa.C.S.A. § 5105(A)(2); simple assault, 18 Pa.C.S.A. § 2701(a)(1); and recklessly endangering another person, 18 Pa.C.S.A. § 2705.

vehicle, was Officer Aaron Kinnel, who had seven years' experience in law enforcement. There were dozens of people in the street attending an impromptu block party. Several of those individuals repeatedly screamed insults, curses, and threats at the responding officers.

One of the individuals yelling at the police was Orialis Figueroa . . . Officers [eventually] decided to take Figueroa into custody to prevent further incident; however, when he was told he was under arrest, Figueroa ran to his apartment building . . .

Officer Kinnel attempted to follow Figueroa, but Figueroa's sister intervened and tried to prevent him from apprehending Figueroa. *Id.* at 42; Commonwealth's Exhibit 1, Video A.[2] As Officer Kinnel made his way up the four steps to the front stoop of the apartment building, two individuals grabbed for his gun. Further, Ramona Colon, who was Figueroa's mother and [Santiago's] girlfriend, stepped into the doorway of the apartment building to block Officer Kinnel's entry. Officer Kinnel moved Colon out of his way and attempted to arrest Figueroa. At this point, Figueroa pulled away from Officer Kinnel and began fighting with him. At the same time, numerous people standing on the front stoop of the apartment building were also interfering with Officer Kinnel's attempt to arrest Figueroa. This included [Santiago], who leapt over the railing to join the melee.

Officer Kinnel took out his taser, but someone knocked it out of his hand. N.T., 1/31/22, at 44. [He] bent down to retrieve the taser and attempted to use it on Figueroa, but only one prong made contact and Figueroa was not subdued. The other prong hit Colon. In the commotion, Officer Kinnel also received shocks from the taser. Officer Kinnel was knocked to the ground on the front stoop. Commonwealth's Exhibit 1, Video A.

After managing to stand up, Officer Kinnel attempted to radio for help. However, when Officer Kinnel was not looking, [Santiago] punched him in the face and then

_____

2 We have reviewed the cellphone video found on Commonwealth's Exhibit 1. It fully supports the Commonwealth's version of events.

pushed him off the porch.  *Id.*; N.T., 1/31/22, at 50.  Officer Kinnel fell backwards off the front stoop and down four steps.  He landed on the concrete sidewalk and hit his head on the metal leg of a picnic table.  N.T., 1/31/22, at 51; Commonwealth's Exhibit 1, Video A.

Officer Kinnel reported that due to the punch and resultant fall, he was in pain, disoriented, and close to losing consciousness.  N.T., 1/31/22, at 51-52.  He was seeing spots and suffered cuts to the back of his head, his back, and his left elbow.  He also had swelling to the left side of his face and his lip was cut.  Another officer took Officer Kinnel to the hospital, where he was treated by Dr. Brenton Taggart.

Dr. Taggart described Officer Kinnel as being confused and anxious upon arrival at the hospital.  N.T., 2/1/22, at 10.  Officer Kinnel had an elevated heart rate, a headache, and back pain.  Dr. Taggart observed a hematoma with an overlying abrasion on Officer Kinnel's scalp, as well as a contusion on his lower back.  Officer Kinnel underwent a CAT scan and was diagnosed with a concussion, which Dr. Taggart explained is "a head injury which results in a temporary alteration in brain function."  *Id.* at 11.  Dr. Taggart testified that a concussion can result in significant and long-lasting symptoms, such as dizziness, headaches, nausea, and vision and memory problems.  Officer Kinnel testified that, following the assault, he missed two weeks of work and, upon returning to work, he was often confused and disoriented during the next two weeks.  N.T., 1/31/22, at 54-55.  Further, he suffered from migraines, which included visual impairment, for approximately a month.

Commonwealth's Brief at 2-4 (some citations omitted).

Officers apprehended Santiago.  A jury convicted him, and the trial court sentenced him as described above.  This timely appeal followed.

Santiago raises one issue on appeal:  "As to the charge of aggravated assault . . . was the guilty verdict . . . based upon insufficient evidence, where

[Officer Kinnel] was punched only once by [Santiago], causing the [officer] to suffer a minor concussion?"[3]  Santiago's Brief at 7.

When reviewing a challenge to the sufficiency of the evidence, we "view the evidence in the light most favorable to the Commonwealth as the verdict winner in order to determine whether the jury could have found every element of the crime beyond a reasonable doubt." **Commonwealth v. Thomas**, 215 A.3d 36, 40 (Pa. 2019).  "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." **Commonwealth v. Vargas**, 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*).  Additionally, this Court cannot "re-weigh the evidence and substitute our judgment for that of the fact-finder." **Id**.  This presents a pure question of law and, as such, our standard of review is *de novo*, and our scope of review is plenary.  **See**, **e.g., Commonwealth v. Jacoby**, 170 A.3d 1065, 1076 (Pa. 2017).

A person is guilty of aggravated assault to a designated individual if he "intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees, or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public

---

[3] Our review of the record and, in particular, the video of this incident belies Santiago's framing of issue.  By stating that he "punched [the officer] only once," Santiago downplays the severity of his conduct.  Santiago's Brief at 7. In actuality, he not only punched Officer Kinnel.  Santigo also shoved him from the residence's front porch, down a short flight of stairs, and caused the officer to fall onto a concrete sidewalk and to hit his head on a metal picnic table.

transportation, while in the performance of duty." 18 Pa.C.S.A. 2702(a)(2). The "officers, agents, employees, and other persons referred to in subsection (a) shall be as follows: (1) Police officer . . . ." 18 Pa.C.S.A. § 2702(c).

Santiago contends that the Commonwealth did not prove that he caused or attempted to cause serious bodily injury to Officer Kinnel, a police officer, under Section (c), *supra*. Santiago believes that, as a matter of law, punching someone once and concussing that individual does not satisfy the statutory definition of "serious bodily injury." We disagree.

The goal of statutory construction is to "effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Thus, if a statute is unambiguous, our review begins and ends with the statute itself.

The General Assembly defined "serious bodily injury" as "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. That statutory definition is clear and unambiguous.

The legislature's use of the disjunctive "or" throughout the definition is particularly important, because it divides the definition into three, separate subparts. Those subparts, in turn, permit a finder of fact to convict someone

of aggravated assault if one of three categories of harm results from an attack. The three categories are:

1.     Harm creating a substantial risk of death

2.     Harm creating serious, permanent disfigurement *or*

3.     Harm causing protracted loss or impairment of a bodily member or organ.

*See* 18 Pa.C.S.A. § 2301.

Here, the jury heard evidence that a concussion, like the one Santiago inflicted upon Officer Kinnel, falls within the third category.

Officer Kinnel's treating physician, Dr. Benton Taggart, testified that a concussion is a bodily injury to the head causing "alteration in brain function." N.T., 2/1/22, at 11. He defined a concussion as "an injury to the brain that is considered temporary in nature that causes impairment in brain function. But the symptoms can be protracted and long-lasting." *Id.* at 28.

Dr. Taggart further explained that, "It was noted that at the time of the incident that [Officer Kinnel] was confused, he did not remember the incident, [and] he was dizzy. He was having visual changes - - that confusion is what actually defines the concussion." *Id.* at 11-12. It requires "symptomatic treatment, whether nausea medication, pain medication, and sometimes you need ongoing therapy afterwards as well." *Id.* at 12.

Dr. Taggart used concussed athletes as an example. He said, "we have . . . sports injuries; they have to go through graded practices to kind of get back into their normal routine, because concussions can affect the way you

think. It can affect the way you move. They can cause a lot of significant impairment, dizziness, memory functions, impairment functions, headaches, vision, things like that." *Id.* Moreover, there are "potential long-term effects of a concussion . . . [including] memory effects, visual effects, chronic headaches, [and] chronic nausea." *Id.* at 12-13. "It could be inability to concentrate . . . Just inability to go about your daily activities as you're used to." *Id.* at 13.

According to Dr. Taggart, the average healing time for a concussion is "about one to two weeks." *Id.* However, sometimes headaches and migraines following a concussion may last "potentially indefinitely." *Id.*

Thus, the doctor's testimony, standing alone, was a sufficient basis from which a reasonable jury could find that, by concussing Officer Kinnel, Santiago inflicted bodily injury that caused "impairment of the function of any . . . organ," *i.e.*, the officer's brain. 18 Pa.C.S.A. § 2301. By altering the function of Officer Kinnel's brain functions, Santiago impaired that organ.

Additionally, Officer Kinnel missed two weeks of work due to the assault and resulting concussion. After returning to work, he was often confused and disoriented for the next two weeks. *See* N.T., 1/31/22, at 54-55. Lastly, the officer had migraines and visual impairment for approximately a month after the incident. *Id.* at 57. Hence, the officer's testimony served as further proof of the impaired brain functions that Santiago's assault caused.

Indeed, this Court reached identical results in similar, non-precedential cases. *See Commonwealth v. McDowell*, 2020 WL 3606390, *2, *5 (Pa.

Super. July 2, 2020) (unpublished) (finding sufficient proof of serious bodily injury where victim suffered bruising, head wound, and a concussion and was unable to work or drive for several months); *see also Commonwealth v. Hanna*, 2019 WL 6652177, *3 (Pa. Super. Dec. 6, 2019) (unpublished) (finding sufficient proof of serious bodily injury where victim suffered a concussion). These decisions are persuasive.[4]

We adopt the holdings of *McDowell* and *Hanna*: concussing someone during an assault is sufficient evidence of "serious bodily injury" under 18 Pa.C.S.A. § 2301, as a matter of law. Hence, the trial court rightly submitted the case of aggravated assault to the jury, because the Commonwealth presented sufficient evidence that Santiago inflicted serious bodily injury upon Officer Kinnel.

Of course, whether an alleged victim actually suffered a concussion is a factual question reserved for the finder of fact. Here, the jury credited Officer Kinnel's and Dr. Taggart's testimony and found, as a matter of fact, that Santiago concussed Officer Kinnel by punching the officer in the head.

Santiago's claim of error is meritless.

Judgment of sentence affirmed.

---

[4] "Non-precedential decisions [of this Court, filed after May 1, 2019,] may be cited for their persuasive value." Pa.R.A.P. 126(b)(2).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/26/2023</u>