J-S38010-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEXIS CAMILLE BOAZ | : | |
| | : | |
| Appellant | : | No. 2812 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 10, 2022
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0001701-2020

BEFORE:   LAZARUS, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 30, 2023**

Alexis Camille Boaz appeals from the judgment of sentence, entered in the Court of Common Pleas of Chester County, after a jury convicted her of one count each of endangering the welfare of children (EWOC)[1] and simple assault.[2]  Upon review, we affirm.

On November 4, 2019, around 6:30 a.m., Boaz was nearing the end of her shift as a member of the support staff at Devereux, a facility in Chester County offering residential services for children and adolescents living with emotional, behavioral, and cognitive differences.  Boaz engaged with a fourteen-year-old, male resident of Devereux, W.W., who was calling female

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4304(a)(1).

[2] *Id.* at § 2701(a)(1).

staff inappropriate names, kicking towards staff, and threw a small object in their direction. Boaz verbally insulted W.W. Shortly thereafter, Boaz physically engaged with W.W. and the two fell to the ground. Boaz held W.W. down, hit his chest with her fists, and kicked or stomped him in the head several times. Nursing staff assessed W.W. after the incident and called ChildLine to report suspected child abuse. Nursing staff observed injuries in the form of red marks on W.W.'s chest, back, arms, face, head, and neck. After an evaluation, the nurse gave W.W. ice and placed him on bed rest. Approximately four to five hours after the incident, W.W.'s mother came to Devereux and brought him to Brandywine Hospital. Following his evaluation at Brandywine Hospital, W.W. was placed on concussion protocol. Upon release from the hospital, W.W. returned to his family home, rather than Devereux, where he was later interviewed by police.

Following a three-day trial, a jury convicted Boaz of the above-stated offenses. With respect to Boaz's EWOC conviction, the jury specifically found that, in the course of committing the offense, Boaz created a substantial risk of death or bodily injury, increasing the grade of the offense to a third-degree felony. *See* 18 Pa.C.S.A. § 4304(b)(1)(iii). The trial court ordered a pre-sentence investigation report prior to sentencing. On October 10, 2022, the Honorable Allison Bell Royer sentenced Boaz to two years of probation for her conviction of EWOC, and a concurrent term of one year of probation for her conviction of simple assault.

On October 20, 2022, while still represented by trial counsel, Boaz filed three *pro se* post-sentence motions.[3]  On October 31, 2022, trial counsel for Boaz timely filed a notice of appeal.  On December 29, 2022, this Court ordered that the trial court conduct a ***Grazier***[4] hearing in response to a November 18, 2022 petition filed by trial counsel requesting an allowance of additional time for the appointment of replacement counsel.  On January 24, 2023, following the ***Grazier*** hearing, the trial court concluded that Boaz was not waiving her right to counsel and granted trial counsel's motion to withdraw.  Subsequently, the trial court appointed new counsel to represent Boaz on appeal.  Boaz filed a timely court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Boaz raises the following issues for our review:

> [1] Was [the Commonwealth's] evidence insufficient for the jury's finding that [Boaz], in the course of committing the offense of [EWOC], . . . created a substantial risk of death or serious bodily injury?
>
> [2] Did the trial court err in granting [the] Commonwealth's motion to preclude [from evidence the] Commonwealth's witness's conviction for unsworn falsification to law enforcement?

---

[3] Hybrid representation is forbidden in this Commonwealth.  ***See Commonwealth v. Jette***, 23 A.3d 1032 (Pa. 2011) (disapproving of *pro se* filings by counseled appellants); ***Commonwealth v. Reid***, 117 A.3d 777, 781 n. 8 (Pa. Super. 2015) (*pro se* post-sentence motion filed by defendant who is represented by counsel is a legal nullity); Pa.R.Crim.P. 576(A)(4).  We note that Boaz's trial counsel had filed a motion to withdraw as the attorney of record and for the appointment of new appellate counsel prior to filing the notice of appeal in this case.  ***See*** Motions, 10/12/22.

[4] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

Appellant's Brief, at 6.

In her first issue, Boaz claims that the evidence was insufficient for the jury to convict her of EWOC where her conduct during the incident with W.W. did not create a substantial risk of death or serious bodily injury. *See* Appellant's Brief, at 20. Boaz argues that there was insufficient evidence to prove that she created a substantial risk of death or serious bodily injury, and, therefore, the court improperly graded the offense as a third-degree felony. *See* Appellant's Brief, at 21-22. Boaz suggests that to prove she created a substantial risk, the Commonwealth needed to present evidence she did so "knowingly," the culpability required for the commission of EWOC. *See* 18 Pa.C.S.A. § 4304(a)(1); *id.* at § 302(b), (d). Boaz further argues that the Commonwealth failed to prove she was "practically certain" her conduct would create a substantial risk of death or serious bodily injury, as it did not produce any medical testimony or evidence of W.W.'s injuries after he was taken to the hospital. *See* Appellant's Brief, at 24.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Randall*, 758 A.2d 669, 674 (Pa. Super. 2000). Furthermore, "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the

evidence." ***Commonwealth v. Moore***, 648 A.2d 331, 333 (Pa. Super. 1994) (citations omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct[,] so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Swerdlow***, 636 A.2d 1173, 1176 (Pa. Super. 1994) (citation omitted). ***See also Commonwealth v. Chmiel***, 639 A.2d 9, 10-11 (Pa. 1994). Moreover, we will not "substitute our judgment for that of the factfinder; if the record contains support for the convictions they may not be disturbed." ***Commonwealth v. Brewer***, 876 A.2d 1029, 1032 (Pa. Super. 2005) (quotations omitted). Finally, "[b]ecause evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013).

To convict someone of EWOC as a third-degree felony, the Commonwealth must prove that the accused is a "parent, guardian[,] or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person," that such a person "**knowingly** endangers the welfare of the child by violating a duty of care, protection[,] or support," and that during the commission of that violation, the person "created a substantial risk of death or serious bodily injury[.]" 18 Pa.C.S.A. §§ 4304(a)(1), (b)(1)(iii) (emphasis added).[5]

_____

[5] EWOC is graded as a misdemeanor of the first degree, unless the person committing the offense did so as a course of conduct, created a substantial
*(Footnote Continued Next Page)*

The standard for culpability is set out in statute as follows, in relevant part:

**(b) Kinds of culpability defined.**--

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

\* \* \*

**(d) Prescribed culpability requirement applies to all material elements.**--When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.

18 Pa.C.S.A. § 302.

Boaz acknowledges that the information was amended to include the third-degree felony grading for the single EWOC count and that the Commonwealth's intent to prove the "substantial risk" factor was set out prior to trial. *See* Appellant's Brief, at 22-23. Boaz also acknowledges that the trial court properly instructed the jury on the additional factor and that the

_____

risk of death or serious bodily injury, or the conduct was both a course of conduct and created a substantial risk. If any of those factors exist, then the offense is graded at a higher felony level. *See id*.

verdict sheet properly reflected a secondary question as to whether Boaz created a substantial risk. *Id.* at 23, App. B. *See also Commonwealth v. Proctor*, 156 A.3d 261, 269 (Pa. Super. 2017) (stating "the trial court must frame the legal issues for the jury and instruct the jury on the applicable law, [however] it must not usurp the power of the jury to be sole judge of the evidence").

In reviewing the record in this case, the evidence shows that three witnesses testified they observed Boaz stomp or kick W.W., a fourteen-year-old, in the face or shoulders, as well as hit him in the chest. First, Boaz's co-worker, Erick Smith, testified that he was preparing to end his shift on November 4, 2019, when he was asked by a supervisor to support two female co-workers with a difficult minor resident. *See* N.T. Trial, 6/1/22, at 50. Smith observed Boaz and another staff member with W.W. *Id*. W.W. insulted Boaz and the other staff member and "kick[ed] out [towards them.]" *Id*. Smith testified that Boaz called W.W. names, and, after a short time, Boaz "rush[ed] in[,]" and Boaz and W.W. were "tussling a little." *Id.* at 50-51. Smith testified that Boaz "was holding [W.W.'s] shirt and stuff [and] holding him down" after they fell to the ground. *Id.* at 59. Smith then stated that he saw Boaz ball her fists and hit W.W. in the chest several times. *Id.* at 59-60. Smith testified that Boaz got up and "start[ed] kicking [W.W.] in the head and stuff with . . . boots [] with a hard [rubber sole.]" *Id.* at 60. Smith's testimony was clear that Boaz "stomp[ed]" W.W. on the head three to four times. *Id.* at 61.

Second, Sheronda King, another of Boaz's co-workers, testified that she was present during the altercation. King testified that Boaz had been alone in the room with W.W. for a few minutes and that, when King entered the room, Boaz and W.W. were "at each other" on the floor. *Id.*, 6/2/22, at 48. King testified that she tried to separate the two, but was unsuccessful, and saw Boaz "on top of [W.W.] kicking him." *Id*. W.W. was "on the ground in [] a fetal position[]" and Boaz was "swinging her feet towards [W.W.]" *Id.* at 48-49. King testified that she saw Boaz's "foot connect with [W.W.] . . . . [p]robably twice."[6] *Id.* at 49.

Third, W.W. testified that during the interaction, Boaz, King, and an unidentified male staff member were blocking W.W.'s door, preventing him from leaving the room. *Id.* at 202-03. W.W. stated that King and Boaz were "instigating and calling [him] names and cursing at [him]." *Id.* at 204-05. W.W. then stated that Boaz "tripped [him] and [he] fell on the floor." *Id.* at 206. W.W. testified that, while he was on the ground, Boaz "stomped [his] head in." *Id.* at 207-08. W.W. stated he could see Boaz to the side of him and could see the bottom of her shoe hit his face. *Id.* at 208. W.W. further stated that he "lost consciousness" during the altercation after his head hit the ground when Boaz kicked him. *Id.* at 208-09.

---

[6] Later in her testimony, King stated that she saw Boaz kick W.W. four times and that there was "a lot going on" and she could not be sure if Boaz punched W.W. *Id.* at 54.

- 8 -

W.W. testified that, later that day, his mother took him to Brandywine Hospital, where they took x-rays and scans of his head. *Id.* at 212. After leaving the hospital, W.W. had to stay away from bright lights, limit his screen time, and limit exercise. *Id.* at 213. W.W.'s mother also took photos of W.W.'s injuries after the altercation, which were presented to the jury. *See id.* at 217-18; Commonwealth Exs. 1 – 12, 16, 17 (admitted N.T. Trial, 6/2/22, at 217-18).

Viewed in the light most favorable to the Commonwealth, the testimony and evidence presented at trial was sufficient to prove that Boaz created a substantial risk of death or serious bodily injury as a result of her course of conduct during the altercation with W.W. *Randall*, *supra*. Further, the jury, as the trier of fact, was properly instructed on the definition of serious bodily injury. *See* N.T. Trial, 6/3/22, at 235, 237. We conclude that the jury could properly find that Boaz, particularly by repeatedly kicking or stomping on W.W.'s head, knowingly created a substantial risk of death or serious bodily injury. Thus, we conclude there was sufficient evidence for the jury to convict Boaz of EWOC graded as a third-degree felony. *See Randall*, *supra*. *See also Commonwealth v. Santiago*, 294 A.3d 482, 486 (Pa. Super. 2023) (compiling cases and concluding that concussion was serious bodily injury).

Boaz's second claim is that trial court erred by granting the Commonwealth's motion *in limine* to exclude from trial Smith's, a Commonwealth's witness, more-than-ten-year-old conviction for unsworn falsification to law enforcement. Appellant Brief, at 25. Boaz takes issue with

the trial court's determination that admission of a witness's conviction would have been more prejudicial than probative due to "the age of [the] conviction coupled with the age of the witness at the time that it was incurred." *Id.* at 32-33 (citation omitted). *See* Pa.R.E. 609(b)(1).

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the [trial] court's decision on such a question absent a clear abuse of discretion." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa. Super. 2005) (citations omitted). "An abuse of discretion is not merely an error of judgment but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Hyland*, 875 A.2d 1175, 1186 (Pa. Super. 2005) (citations omitted).

Pennsylvania Rule of Evidence 609 provides, in pertinent part:

**(a) In General**. For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.

**(b) Limit on Using the Evidence After 10 Years**. This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

**(1)** its probative value substantially outweighs its prejudicial effect; and

**(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

- 10 -

Pa.R.E. 609(a), (b)(1) & (2).

Convictions more than ten years old may be used upon a judge's determination that the probative value substantially outweighs the prejudicial effect. *See* Pa.R.E. 609(b)(1). The Pennsylvania Supreme Court has held that any prior convictions introduced "must be for a crime that reflects upon the perpetrator's veracity." ***Commonwealth v. Roots***, 393 A.2d 364, 366 (Pa. 1978). ***See also Commonwealth v. Bighum***, 307 A.2d 255, 262 (Pa. 1973). The Supreme Court also stated a trial court should consider and balance other factors before determining the admissibility of evidence in the form of prior convictions for impeachment purposes, including:

> 1) the degree to which the commission of the prior offense reflects upon the veracity of the []witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the [witness] and suggest a propensity to commit [a] crime [], rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the [witness]; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the [witness's] credibility.

***Roots***, 393 A.2d at 367. ***See also Commonwealth v. Randall***, 528 A.2d 1326, 1328 (Pa. 1987).

- 11 -

The conviction at issue was Smith's conviction for unsworn falsification to authorities[7] in 2008. The Commonwealth made a motion to prohibit Boaz from questioning Smith on the conviction on the basis that it was more than ten years old. **See** N.T. Preliminary Hearing, 5/31/22, at 55. Following an on-the-record discussion, the court briefly took the matter under advisement before ruling on the record and granting the Commonwealth's motion. **Id.** at 55-65. **See also** Trial Court Opinion, 5/4/23, at 13-16 (reproducing relevant portions of transcript).

Applying the five-factor test set out above, **Roots**, **supra**, as it pertains to Smith's prior conviction, we find the trial court properly weighed the factors and did not abuse its discretion in granting the Commonwealth's motion *in limine*. The first factor, the degree to which the offense reflects upon the witness's veracity and credibility, directly relates to a conviction of *crimen falsi*. In the instant case, this was Smith's only *crimen falsi* conviction. We have held that a prior conviction of perjury, for example, may be admissible well beyond the ten-year period. **See Commonwealth v. Osborn**, 528 A.2d 623, 627 (Pa. Super. 1987). Furthermore, a prior conviction of *crimen falsi* is generally relevant to a jury's determination of the witness's testimony. **See Commonwealth v. Rivera**, 983 A.2d 1211, 1228 (Pa. 2009); **Commonwealth v. Cascardo**, 981 A.2d 245, 256 (Pa. Super. 2009). The

---

[7] 18 Pa.C.S.A. § 4904. Crimes of falsehood, such as unsworn falsification to authorities, are commonly referred to as *crimen falsi*. **See, e.g.**, **Commonwealth v. Moser**, 999 A.2d 602, 607 n.6 (Pa. Super. 2010).

trial court, in its evaluation, noted that Smith's conviction was related to an unsworn statement, not under oath, and not necessarily predictive of his veracity and credibility under oath. **See** Trial Court Opinion, 5/4/23, at 23. The trial court was aware that the conviction was related to a firearms charge. However, the firearms charge was *nolle prossed* and no additional information was presented to the trial court as to the circumstances surrounding the unsworn falsification conviction. **See** N.T. Preliminary Hearing, 5/31/22, at 57-58.

The second factor addresses the nature and extent of Smith's prior record and whether it would have a greater tendency to smear his character than discredit him on the stand. Here, the conviction at issue was Smith's only *crimen falsi* conviction and the trial court had limited information as to the circumstances, beyond its relation to a gun charge. The unsworn statement, in conjunction with details about the gun charge, could tend to smear his character, rather than simply discredit his testimony. **But see Osborn**, 528 A.2d at 627-28 (stating perjury, unlike other crimes, does not "suggest any propensity" to commit crimes for which the defendant-witness was charged).

Judge Royer inquired into the third factor, Smith's age and circumstances, at the hearing. **See** N.T. Preliminary Hearing, 5/31/22, at 57. The Commonwealth stated that Smith was 23 years old at the time of his conviction, which occurred fourteen years prior to the trial. **Id**. The trial court found that Smith's young age at the time of his conviction and the old age of the conviction to be a particularly compelling factor in favor of preclusion. **Id.**

at 65. *See Osborn*, 528 A.2d at 628 (discussing ages of witnesses and convictions).

The fourth factor considers the importance of the witness's testimony and whether the case turned on the credibility of the witness. *See id*. The trial court recognized that Smith's testimony was important as an individual "involved in the same fracas," N.T. Preliminary Hearing, 5/31/22, at 64, but that he was not the only witness to provide testimony as to the events on the day in question. The jury heard from King, W.W., and Boaz, and was also shown photographs of W.W. following the incident.[8] Smith was not the Commonwealth's sole witness for the purpose of establishing what happened on the day in question and who was responsible for W.W.'s injuries.

Regarding the last factor, the existence of alternative means of attacking Smith's credibility, Boaz had several alternative means, which she utilized at trial. Smith changed the details of his report by initially not stating Boaz had caused W.W.'s injuries. *See* N.T. Trial, 6/1/22, at 65-67, 72-74, 81-82. Indeed, it was suggested that Smith may have been motivated to point the finger at Boaz to avoid being personally implicated in the incident, *id.* at 70-72, 74-78, 80-82, 86-103, 123-25, and it was even acknowledged at the preliminary hearing that Boaz had "plenty to explore without [the *crimen falsi*.]" N.T. Preliminary Hearing, 5/31/22, at 65.

---

[8] *See supra* pp. 7-8.

Upon review of the record, and balancing the relevant factors set forth above, we find that the trial court did not abuse its discretion in granting the Commonwealth's motion *in limine*. **See Harris**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/30/2023