J-A20014-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: K.T.-W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: K.T.-W., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2975 EDA 2024 |

Appeal from the Dispositional Order Entered October 17, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-JV-0001232-2024

BEFORE: MURRAY, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 8, 2025**

K.T.-W. (Appellant) appeals from the dispositional order entered after the juvenile court adjudicated him delinquent of one count each of aggravated assault, conspiracy to commit aggravated assault, robbery, simple assault, recklessly endangering another person, harassment, and disorderly conduct.[1] After careful review, we affirm.

Appellant was sixteen years old at the time of the offenses. The juvenile court summarized the facts adduced at the adjudicatory hearing:

> Complainant[, an eleven-year-old male,] testified that on August 21, 2024, at around 5:30 [p.m.], he was taking the 56th Street [subway] train into the [C]ity [of Philadelphia] for football practice. N.T., 10/17/24, at 13. … Complainant testified that he

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 903, 3701(a)(1), 2701(a), 2705, 2709(a)(1), 5503(a)(1).

first encountered Appellant while … waiting [for the train] to [arrive at] his stop at 15th Street. *Id.* at 15. … Complainant testified that Appellant [was] wearing a black hoodie with pink writing on the front and white writing on the back. *Id.* at 17.

Complainant stated that two other boys around his age [(not including Appellant)] tried to take his helmet and pads, but Complainant managed to retain possession of his belongings. *Id.* at 15. He testified that one of the two boys then punched him twice, and Complainant admitted he retaliated and punched the boy back. *Id.* Complainant stated that there were about five other individuals on the train car with [the two boys], including Appellant. *Id.*

After the exchange, the two boys went to the front of the train car until [it] arrived at 15th Street, where … they proceeded to follow [Complainant] to the street entrance. *Id.* at 16. It was then, Complainant stated, that the group "jumped him." *Id.* … Appellant, with a closed fist, began punching [Complainant] in the head. *Id.* Complainant testified he was on the floor while this occurred[,] and that eventually the other group members joined in, kicking Complainant in the arm, the head, and the side of his body. *Id.* at 17. Complainant stated that Appellant had kicked him in the head two or three times before the alleged assault ceased[,] and the group left Complainant alone briefly before returning. *Id.* at 17-18….

[Southeastern Pennsylvania Transportation Authority (SEPTA)] Police Officer Richie Tiu (hereinafter Officer Tiu) … testified that he had heard a commotion in the mezzanine area while he was at surface level on 15th Street. *Id.* at 33. When he went to investigate, … he observed a young black male on the ground in the fetal position and a group of juveniles walking towards the platform on the eastbound side. *Id.* at 33-34. Officer Tiu pursued the group of juveniles while another responding officer attended to the juvenile on the ground. *Id.* at 34. … [Officer Tiu caught up with the group and encountered Appellant, who wore] a black hoodie with graphic designs, the most noticeable feature being the word "hustle" on the front and back of the hoodie. *Id.* at 34-35. Officer Tiu stated that he observed Appellant pacing around; even after [Officer Tiu told] Appellant not to move, Appellant continued to move as if "it was no big deal. Just taking it like as a joke." *Id.* at 35. [Officer Tiu arrested Appellant. *Id.* at 38-39.] …

- 2 -

Detective Sarro[2] of the SEPTA Police Department … testified to his involvement with the investigation of the incident [involving Complainant and Appellant]. *Id.* at 40. He stated that he was able to recover a [surveillance] video [depicting the portion of the assault occurring near the train station street entrance] and authenticated the same…. *Id.* at 40-41; *see also* Exhibit C-5 (video). … Complainant was shown the video and asked if he recognized himself; he answered affirmatively. N.T., 10/17/24, at 44-45. He identified Appellant in the video [and further identified] the clothing [Appellant] had been wearing on the day of the alleged assault…. *Id.* at 45.

… Complainant testified that he had told the attending officers that his cleats had been taken. *Id.* at 29. … [However,] Detective Sarro testified that Complainant had not reported anything being taken from him. *Id.* at 42.

Juvenile Court Opinion, 2/12/25, at 3-5 (citations modified; footnote and some paragraph breaks added).

The juvenile court also summarized Complainant's testimony regarding his injuries:

Complainant [testified] he was having trouble breathing after[ the assault,] as he has asthma. N.T., 10/17/24, at 18. Complainant went to the hospital for [an] assessment of his arm and bruising on his head and back. *Id.* at 24, 28, 30. He was submitted for an x-ray and monitored for a potential asthma attack. *Id.* at 24. Complainant was released from the hospital after being diagnosed with a sprained arm, which had been splinted/braced. *Id.* Complainant testified he wore the splint/brace for two to three weeks and could not play football [during that period]. *Id.*

Juvenile Court Opinion, 2/12/25, at 4 (citations modified).

_____

[2] Detective Sarro's first name does not appear in the certified record.

- 3 -

On August 22, 2024, the Commonwealth filed a delinquency petition charging Appellant with the above offenses.[3] On the same date, a juvenile hearing officer ordered Appellant released to his parents, subject to in-home detention.

On October 17, 2024, following an adjudicatory hearing, the juvenile court determined the Commonwealth had substantiated each of the above offenses. The court "adjudicated Appellant delinquent, in need of treatment, supervision, and rehabilitation." Juvenile Court Opinion, 2/12/25, at 2. The court placed Appellant "on probation, remaining subject to [in-home detention] with mandatory school [attendance]." *Id.* at 3. The court ordered Appellant to "attend anger management and individual counseling," and write an apology letter to Complainant. *Id.* "Further, Appellant was to remain arrest-free and obey the rules of his mother's home and the rules of probation." *Id.*

Appellant timely appealed. Appellant and the juvenile court have complied with Pa.R.A.P. 1925. Appellant identifies three questions for our review:

> 1. Was the evidence insufficient to establish that [Appellant] committed the act of aggravated assault, as [Complainant] did not sustain serious bodily injury, and the Commonwealth did not

---

[3] While the juvenile court described the other juveniles participating in the assault as "co-defendants," *see* Juvenile Court Opinion, 2/12/25, at 9, 10, the certified record does not make clear whether those juveniles were arrested or charged.

establish that [Appellant] had specific intent to cause serious bodily injury?

2. Was the evidence insufficient to establish that [Appellant] committed the act of conspiracy to commit aggravated assault, as there is no evidence of any agreement to commit aggravated assault, and no evidence that Appellant had the specific intent to fulfill the object of the conspiracy, the infliction of serious bodily injury?

3. Was the evidence insufficient to establish that [Appellant] committed the act of robbery because the Commonwealth failed to prove that a theft occurred, and that [Appellant] had the intent to deprive [Complainant] of any of his property?

Appellant's Brief at 2-3 (issues reordered).

Each of Appellant's issues challenges the sufficiency of the evidence underlying his adjudications. We observe the following standard of review:

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth. The finder of fact is free to believe some, all, or none of the evidence presented.

*Int. of K.G.*, 278 A.3d 934, 938-39 (Pa. Super. 2022).

- 5 -

In his first issue, Appellant argues the evidence was insufficient to support his adjudication for aggravated assault. *See* Appellant's Brief at 14-29. A person is guilty of aggravated assault if he

> attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life….

18 Pa.C.S.A. § 2702(a)(1). "Serious bodily injury" is defined as

> [b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

*Id.* § 2301. If a victim does not suffer actual "serious bodily injury," a defendant may be convicted of aggravated assault where he "attempts to cause serious bodily injury…." *Id.* § 2702(a)(1). Instantly, Appellant argues that Complainant did not suffer serious bodily injury, and that Appellant lacked the specific intent required to prove he attempted to cause serious bodily injury. *See* Appellant's Brief at 14-29. We address each of these arguments in turn.

Appellant first asserts Complainant's "injuries—a sprained wrist and bruising—did not meet the threshold for serious bodily injury." *Id.* at 16. Appellant maintains that other than being unable to play football, "the only limitation [Complainant] identified was cooking, which he testified caused him pain." *Id.* at 17. Appellant argues that "[m]any cases involve injuries that may cause substantial pain but do not rise to the level of serious bodily injury." *Id.* Rather, Appellant asserts,

cases in which trial courts find a victim suffered serious bodily injury typically involve permanent limitations, lengthy hospital stays immediately after the injury, a need for ongoing treatment like surgeries or extensive therapy, and/or, at a minimum, multiple weeks to months of missing work.

*Id.* at 18 n.9.

The Commonwealth counters that the evidence was sufficient to establish Complainant suffered serious bodily injury. Commonwealth Brief at 7-9. The Commonwealth notes that "serious bodily injury" includes injury that "causes protracted loss or impairment of the function of any bodily member or organ." *Id.* at 7 (quoting 18 Pa.C.S.A. § 2301). The Commonwealth argues "[a] reasonable fact-finder would be free to find that" Complainant's injuries met this standard. *Id.* at 8-9.

The juvenile court set forth the following analysis in its opinion:

Complainant testified to having been kicked in the side of his body, his arm, and his head[;] Appellant str[uck] Complainant in the head … with a closed fist[,] before delivering two kicks to Complainant's head[,] when Complainant was on the ground. N.T., 10/17/24, at 16-18. As a result of this assault, Complainant was diagnosed with a sprained arm that required immobilization so it could heal, which prohibited Complainant from participating in sports and made everyday tasks difficult for him. *Id.* at 24-25, 28, 30. The pertinent part of [the statutory] definition of "serious bodily injury" is "bodily injury which causes … protracted loss or impairment of any bodily member or organ." [18 Pa.C.S.A. § 2301.] Complainant is a child, and for a child to lose use of [his] arm in its full capacity for two to three weeks is, proportionally, a protracted loss or impairment.

Juvenile Court Opinion, 2/12/25, at 8 (citations modified).

We agree with the juvenile court's reasoning. In construing "protracted loss or impairment," 18 Pa.C.S.A. § 2301, we find instructive our decision in

*Commonwealth v. Santiago*, 294 A.3d 482 (Pa. Super. 2023). There, the defendant punched the victim in the head, causing him to fall, hit his head on the sidewalk, and suffer a concussion. *Id.* at 484. The victim "missed two weeks of work due to the assault and resulting concussion. After returning to work, he was often confused and disoriented for the next two weeks. Lastly, [the victim] had migraines and visual impairment for approximately a month after the incident." *Id.* at 486 (record citation omitted). The victim's doctor described a concussion as "an injury to the brain that is considered temporary in nature that causes an impairment in brain function." *Id.* The doctor further testified that "the average healing time for a concussion is 'about one to two weeks.'" *Id.* The defendant argued the evidence was insufficient to establish the "serious bodily injury" element of his aggravated assault conviction. We disagreed, and held that "concussing someone during an assault is sufficient evidence of 'serious bodily injury' under 18 Pa.C.S.A. § 2301, as a matter of law." *Id.* Specifically, we determined the victim's concussion resulted in "protracted loss or impairment of a bodily member or organ." *Id.* at 485 (quoting 18 Pa.C.S.A. § 2301); *see also id.* ("By altering the function of [the victim's] brain, [the defendant] impaired that organ.").

Here, Complainant suffered a sprained wrist and had to wear a wrist cast for two to three weeks. N.T., 10/17/24, at 24, 28.[4] He testified that he could not play football during that period and had difficulty performing day-to-day tasks. *Id.* at 24-25; *see id.* (Complainant's testimony that "[w]hen I … was trying to cook something[,] I couldn't because my arm hurt on a daily basis."). This evidence is sufficient to establish that Complainant's injury impaired the function of his wrist/arm. Moreover, considering the *Santiago* Court's determination that "impairment for approximately a month after the incident" constituted "protracted" impairment, *Santiago*, 294 A.3d at 485-86, we agree with the juvenile court that Complainant's impairment for two to

_____

[4] Asked on direct examination how long he wore the wrist cast, Complainant testified, "Three, two weeks." N.T., 10/17/24, at 24. On cross examination, he stated, "two and a half weeks." *Id.* at 28.

three weeks is sufficient to establish "protracted" impairment.[5, 6]  ***See***

***Commonwealth v. Phillips***, 410 A.2d 832, 834 (Pa. Super. 1979) (where

the victim "was forced to spend two weeks in the hospital and was unable to

walk for a month," holding that the victim's injury was "clearly within the

ambit of a 'protracted … impairment of … any bodily member or organ.'"); ***see***

_____

[5] Appellant relies on three aggravated assault cases in which the Commonwealth conceded the victims did not suffer serious bodily injury.  ***See*** Appellant's Brief at 17 (citing ***Commonwealth v. Alexander***, 383 A.2d 887 (Pa. 1978); ***Commonwealth v. Robinson***, 817 A.2d 1153 (Pa. Super. 2003); and ***Commonwealth v. Dailey***, 828 A.2d 356 (Pa. Super. 2003)).  In ***Alexander***, the victim "sustained a broken nose as a result of a single blow…." ***Alexander***, 383 A.2d at 888; ***see also id.*** at 889 ("The Commonwealth does not contend that appellant in fact inflicted serious bodily injury upon the victim.").  In ***Robinson***, the victim "experienced some back pain as a result of being struck [in the back with a handgun] by the assailant. However, [the victim] complained of no significant impairment and did not even seek medical attention for the 'injury.'"  ***Robinson***, 817 A.2d at 1158 n.4; ***see also id.*** ("We note that the Commonwealth seemingly concedes that [the victim] did not sustain a serious bodily injury….").  In ***Dailey***, the defendant "struck [the victim] at least twice in the face with a closed fist," causing him "to suffer a cut on his nose, swelling around his left eye, and bruising."  ***Dailey***, 828 A.2d at 357; ***see also id.*** at 359 ("The parties agree that [the defendant] did not actually cause serious bodily injury to the victim.").  These three cases are not instructive.  None involve a judicial determination as to whether serious bodily injury actually occurred and, more importantly, none implicate the "protracted … impairment" aspect of serious bodily injury at issue here.

[6] Appellant also cites ***Washington v. Baxter***, 719 A.2d 733 (Pa. 1998), a tort case in which our Supreme Court determined that a plaintiff's injury—which included sprains and caused the plaintiff to miss four or five days of work—did not constitute "serious impairment of body function" under the Motor Vehicle Financial Responsibility Law.  ***Id.*** at 736 (citing 75 Pa.C.S.A. § 1702).  Appellant's reliance on this civil case is unpersuasive, as it involves a different statutory definition.  "Serious bodily injury" under the Crimes Code does not require that impairment be "serious," but rather "protracted."  18 Pa.C.S.A. § 2301.

*also Commonwealth v. Nichols*, 692 A.2d 181, 184 (Pa. Super. 1997) (holding evidence was sufficient to establish serious bodily injury via protracted impairment, where the victim's "jaw was wired shut for six weeks during which he could only ingest through a straw."); *Commonwealth v. Cassidy*, 668 A.2d 1143, 1146 (Pa. Super. 1995) (holding evidence was sufficient to establish serious bodily injury via protracted impairment, where the victim had to wear a back brace and removable wrist cast for two months).

Alternatively, the juvenile court opined that even if Complainant's injuries did not constitute serious bodily injury, the evidence established Appellant attempted to cause serious bodily injury. *See* Juvenile Court Opinion, 2/12/25, at 8-9. Appellant argues the evidence was insufficient to establish that he had the specific intent required to prove an attempt to cause serious bodily injury. *See* Appellant's Brief at 19-29. He asserts that the evidence showed he "had numerous opportunities to inflict further harm on [Complainant] and declined to do so…." *Id.* at 23. Appellant maintains that he and the other juveniles used no weapons and ceased their attack on Complainant of their own accord, without intervention from police or bystanders. *Id.* at 23-25, 27. Appellant also argues he made no statements evincing an intent to inflict serious bodily injury. *Id.* at 28.

The Commonwealth counters that the evidence "was easily sufficient to prove [Appellant's] intent to cause serious bodily injury." Commonwealth Brief at 10. The Commonwealth argues Appellant "and several other attackers

- 11 -

ganged up and repeatedly beat [Complainant] … about the head and body." *Id.* at 9. The Commonwealth maintains Appellant and the other attackers "did not simply walk away, but instead stopped and then re-engaged the attack at least once before finally leaving the scene. They left the battered [Complainant] lying prone on the platform in the fetal position…." *Id.*

"For aggravated assault purposes, an 'attempt' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gruff*, 822 A.2d 773, 776 (Pa. Super. 2003). "A person acts intentionally with respect to a material element of an offense when … it is his conscious object to engage in conduct of that nature or to cause such a result…." 18 Pa.C.S.A § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006) (citations and quotation marks omitted).

In *Alexander*, our Supreme Court

> created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might

- 12 -

indicate his intent to inflict injury. ***Alexander***, [383 A.2d] at 889. ***Alexander*** made clear that "simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault...." ***Id.*** at 889-90.

***Matthew***, 909 A.2d at 1257.

Instantly, the juvenile court set forth the following analysis:

Even if Complainant's sprained arm and bruising were not considered a serious bodily injury, ***Commonwealth v. Faulk***, 928 A.2d 1061 (Pa. Super. 2007), establishes that intent to cause serious bodily injury can be established by evidence showing that the perpetrator intended to "strike again a victim already dazed and helpless by the initial blows." ***Id.*** at 1071. Complainant testified that Appellant struck him in the head several times, and while Complainant was on the ground, Appellant continued to attack him, kicking him in the head. N.T., 10/17/24, at 16-18. These actions speak to Appellant's intent, as Appellant changed his attack methods from punching to kicking while Complainant was already on the ground and helpless. Appellant struck Complainant in the head with his fists several times, and once the group began to assault Complainant, Appellant continued his attack, even when Complainant was defenseless and not resisting, [with Appellant then] switching to kicking Complainant. These actions lead to the inference beyond a reasonable doubt that Appellant acted intentionally, and it was his conscious object to engage in the conduct that resulted in the injuries sustained by Complainant. Appellant attacked Complainant not once, but twice. Appellant had the opportunity to walk away[,] but instead he engaged with the other co-defendants in the group assault. ***Id.*** at 17-18; Exhibit C-5.

Juvenile Court Opinion, 2/12/25, at 8-9 (citations modified).

Appellant argues the juvenile court failed to apply the totality-of-the-circumstances test created in ***Alexander***, and asserts ***Faulk*** is distinguishable because the victim in that case suffered far greater injuries than those

- 13 -

sustained by Complainant.[7]  ***See*** Appellant's Brief at 21-22.  Our review discloses that the totality of the circumstances, viewed in the light most favorable to the Commonwealth, support the juvenile court's analysis and conclusion.

While we agree with Appellant that ***Faulk*** is not controlling, we consider Appellant's kicks and punches, delivered while Complainant was on the ground and helpless, to be evidence supporting his intent to cause serious bodily injury.  ***See Commonwealth v. Bruce***, 916 A.2d 657, 662-63 (Pa. Super. 2007) (holding defendant's continuation of the assault after the victim was dazed and helpless supported a finding of intent to cause serious bodily injury); ***Commonwealth v. Lewis***, 911 A.2d 558, 565 (Pa. Super. 2006) (same); ***Dailey***, 828 A.2d at 360-61 (same).  Further, the group assault—in which Appellant actively participated—resulted in an overwhelming difference in size and strength between Complainant and his assailants.  ***See Matthew***, 909 A.2d at 1257; ***see also Commonwealth v. Glover***, 449 A.2d 662, 665 (Pa. Super. 1982) (where the victim testified "that three men hit him in the head with their fists and kicked him[,] … the jury could have inferred that the

---

[7] In ***Faulk***, the defendant "punched [the victim] numerous times in the head until his face was bloody and swollen, and he was barely conscious."  ***Faulk***, 928 A.2d at 1071.  After "the victim already appeared to be unconscious," the defendant "continued to punch him five or six more times."  ***Id.***  The victim's "injuries included brain injury, several fractures, lost teeth, and subdural hematoma.  He experienced post-traumatic amnesia, and at the time of … trial, continued to have difficulty with memory, balance, and walking."  ***Id.*** at 1063-64 (footnote omitted).

defendant attempted to cause serious bodily injury," even where the victim "said he did not consider the injuries he received to have been serious."). Though Appellant asserts the group ceased the assault without outside intervention, we observe that the surveillance video shows another member of Appellant's group restraining Appellant on two occasions as Appellant punched and kicked Complainant, who was on the ground. *See* Exhibit C-5; *see also Matthew*, 909 A.2d at 1257 (identifying "any restraint on the defendant preventing him from escalating the attack" as a factor indicating an intent to cause serious bodily injury).

We also find *Santiago* instructive, particularly its holding that a concussion constitutes serious bodily injury "as a matter of law." *Santiago*, 294 A.3d at 486. Appellant's acts of repeatedly punching and kicking Complainant in the head, viewed in the light most favorable to the Commonwealth, evince an intent to cause just such an injury.

Though Appellant did not use a weapon or make statements evincing his intent, *see Matthew*, 909 A.2d at 1257, we conclude that the totality of the circumstances sufficiently established Appellant's intent to cause serious bodily injury. We therefore agree with the juvenile court that even if Complainant did not actually suffer serious bodily injury, Appellant's adjudication for aggravated assault would nevertheless stand as an attempt to cause serious bodily injury. Accordingly, Appellant's first issue merits no relief.

In his second issue, Appellant challenges the sufficiency of the evidence underlying his adjudication for conspiracy to commit aggravated assault. *See* Appellant's Brief at 30-31. Regarding conspiracy, the Crimes Code provides that

[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). Appellant concedes the evidence was sufficient to establish conspiracy to commit *simple* assault, but maintains that neither Appellant nor his fellow assailants possessed the requisite intent to commit aggravated assault. *See* Appellant's Brief at 30. However, as set forth above, we determined the evidence sufficiently established Appellant's intent to cause serious bodily injury. Our analysis applies equally to Appellant's co-conspirators, and Appellant's second issue therefore merits no relief.

In his third and final issue, Appellant challenges the sufficiency of the evidence underlying his robbery adjudication. *See* Appellant's Brief at 11-14. The Commonwealth charged Appellant with robbery under 18 Pa.C.S.A. § 3701(a)(1)(i), which provides that "[a] person is guilty of robbery if, ***in the course of committing a theft***, he … inflicts serious bodily injury upon

another….'' 18 Pa.C.S.A. § 3701(a)(1)(i) (emphasis added). As we determined above that Appellant inflicted serious bodily injury on Complainant, we focus on Appellant's argument that the assault did not occur in the course of committing a theft. **See** Appellant's Brief at 11-14.

Appellant notes that the juvenile court credited Complainant's testimony that his cleats were taken. **Id.** at 12 (citing Juvenile Court Opinion, 2/12/25, at 12-13). However, Appellant maintains the surveillance video showed the cleats were not taken, and that Complainant left the train station in possession of his cleats and other belongings. **Id.** 12-13 (citing Exhibit C-5); **see also id.** (arguing "video footage … may constitute contradictory evidence sufficient for this Court to reject" a trial court's credibility determination (citing **Commonwealth v. Griffin**, 116 A.3d 1139, 1143-44 (Pa. Super. 2015)). Appellant argues the assailants repeatedly took Complainant's belongings, but "continually return[ed] the items almost immediately…." **Id.** at 13. Appellant maintains the assailants had no intent to commit theft, as they had "almost unfettered access to [Complainant's] belongings," but decided "to forego the opportunity to deprive [Complainant] of those belongings, instead handing or throwing them directly back to him." **Id.** at 14.

The Commonwealth does not appear to dispute Appellant's contention that the video shows Complainant's cleats were ultimately returned. **See** Commonwealth Brief at 13. However, the Commonwealth asserts the video showed Appellant initially took the cleats and tossed them down the subway

stairs, then retrieved the cleats and eventually dropped them. *Id.* (citing

Exhibit C-5). The Commonwealth also maintains the video showed Appellant

"and his co-conspirators rifling through [Complainant's] football equipment at

different intervals while simultaneously assaulting him." *Id.* (citing Exhibit C-

5). The Commonwealth argues this evidence established at least an

attempted theft. *Id.*

> This Court has held "[a] conviction for robbery does not require proof of a completed theft[.]" **Commonwealth v. Robinson**, 936 A.2d 107, 110 (Pa. Super. 2007). Rather, "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission." 18 Pa.C.S.A. § 3701(a)(2); *see also Robinson*, 936 A.2d at 110. "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).[8] On the other hand, "[a]n attempted theft is committed when a person, with intent to commit a theft, does any act which constitutes a substantial step toward commission of the theft." **Commonwealth v. Ennis**, 574 A.2d 1116, 1119 (Pa. Super. 1990) (citing 18 Pa.C.S.A. § 901(a)).

**Commonwealth v. Gary**, 332 A.3d 118, 124 (Pa. Super. 2025) (some

citations modified; footnote added).

_____

[8] "Deprive" is defined as:

> (1) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

> (2) to dispose of the property so as to make it unlikely that the owner will recover it.

18 Pa.C.S.A. § 3901.

Our review confirms the Commonwealth's characterization of the video evidence. Appellant took Complainant's cleats and threw them down the stairs, retrieved them, and then ultimately dropped them. Exhibit C-5. Other members of Appellant's group rifled through Complainant's belongings during the assault. *Id.* Further, Complainant's testimony regarding the initial portion of the encounter (not depicted in the video) established that the assault began when Complainant resisted the attempt by Appellant's co-conspirators to take Complainant's football pads. N.T., 10/17/24, at 15.

This evidence shows the assault on Complainant was inextricably bound up with the repeated efforts of Appellant and his co-conspirators to take Complainant's belongings out of his possession. That the assailants ultimately discarded Complainant's belongings is not dispositive as to whether an attempted theft occurred. *See*, *e.g.*, *Gary*, 332 A.3d at 124-25 (holding evidence was sufficient to establish "in the course of committing a theft" element of robbery where the defendant and others confronted the victim and demanded money; after fatally shooting the victim, the assailants fled without taking anything). Viewed in the light most favorable to the Commonwealth, the evidence established that Appellant and the other assailants initially intended to deprive Complainant of his property, but in the course of the assault, abandoned the property. In taking Complainant's cleats, Appellant took a substantial step toward committing theft. The evidence is therefore sufficient to establish attempted theft and, concomitantly, the "in the course

of committing a theft" element of robbery. ***See Gary***, 332 A.3d at 124.

Accordingly, Appellant's final issue merits no relief.

Dispositional order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/8/2025